[Crim. No. 6413. Third Dist. June 9, 1972.]

In re S. A. PICKETT on Habeas Corpus.

## COUNSEL

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Arnold O. Overoye and Edward W. Bergtholdt, Deputy Attorneys General, for Appellant.

Norris M. Goodwin for Respondent.

## OPINION

**COAKLEY, J.**\*—The respondent on this appeal petitioned the Superior Court of Butte County for a writ of habeas corpus seeking his release and discharge from jail. He had been sentenced by the judge of the justice court to serve 60 days upon conviction on two misdemeanor counts of violating zoning ordinances of Butte County. The court granted the petition, ordered issuance of the writ and Pickett's discharge from custody. For the sake of clarity, we will take the liberty of referring to the respondent by his surname.

The sole issue on this appeal by the Sheriff of Butte County is whether the court erred in granting the petition. It is the Attorney General's position, as counsel for the appellant, that Pickett's remedy was by direct appeal, and that habeas corpus does not lie. We hold first, that habeas corpus was the proper remedy, albeit that the court assigned the wrong reason for granting the writ; and second, that the court should have remanded the case to the justice court for rearraignment for sentencing, rather than granting an outright discharge from custody.

From an altogether inadequate record, we are able to glean the following: That the ordinances, for violations of which Pickett was convicted, prohibited the maintaining of a trailer on lands zoned for "[o]ne (1) family dwellings, not including tents or trailers," and the parking of a trailer on such land for longer than five days in any consecutive 30-day period without a permit. Basic to these ordinances was an earlier ordinance which (1) exempted from all zoning ordinances all existing, prior non-conforming uses, and (2) prohibited the enlargement of any nonconforming use without first securing a permit.

Ten witnesses testified in the justice court. Unfortunately, no court reporter was present at any of the proceedings in that court. Therefore, we must look to the official minutes of that court and to the record of the proceedings in superior court on the petition for habeas corpus[1] to deter-

---

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]This record includes: Copies of the ordinances, a single, inadequate jury instruction on the subject of prior nonconforming use, affidavit of the deputy district attorney who tried the case in the justice court, and affidavits of several witnesses who testified in that court. The latter included affidavits of several persons who had testified for Pickett. These affidavits recited their knowledge of Pickett's prior nonconforming use and of his removal of his trailer for periods not exceeding three months. These affidavits did not state that the affiants so testified at Pickett's trial. However, since the existence or nonexistence of a prior nonconforming use was the principal issue in the one-day trial, it is reasonable to assume that the affidavits of Pickett's affiants

mine the nature of the issues and the testimony in the justice court. Granted that the record of what transpired in the justice court is sketchy, it is nevertheless reasonably clear that testimony was received in that court to the effect that (a) Pickett maintained a house trailer on his property before and after enactment of the ordinances, (b) after enactment of the ordinances, Pickett removed his house trailer for various periods of time not exceeding three months on each occasion, and (c) after the enactment of the ordinances, Pickett moved a new or different trailer onto his property.

The court gave the following reason for granting the writ: "And the court does find in this instance that there is no dispute in the facts, but there was a prior non-conforming use and the issue of abandonment was not properly presented to the jury." The fact that the evidence established that there was little or "no dispute" as to Pickett's prior nonconforming use, and that the issue of the abandonment of that use "was not properly presented to the jury," does not alter the fact that both were issues which, by its verdict, the jury found against Pickett. For this reason we agree with the Attorney General that in granting the petition *upon the grounds quoted,* the court misunderstood the nature and purpose of habeas corpus.

■ The rule is thus expressed in *In re Domingo* (1969) 268 Cal.App. 2d 642, 645 [74 Cal.Rptr. 161]: " 'The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.' " (See *Neal* v. *State of California* (1960) 55 Cal.2d 11, 16 [9 Cal.Rptr. 607, 357 P.2d 839].)

■ It is equally settled law that though a writ of habeas corpus may not be used as a substitute for an appeal, a " 'violation of the defendant's constitutional rights during the trial leading to his conviction is ground for attack on the judgment in a habeas corpus proceeding if the petitioner has no other adequate remedy to test the constitutionality of the proceeding resulting in his conviction.' " (*In re McCoy* (1948) 32 Cal.2d 73, 76 [194 P.2d 531], quoting *In re Wallace* (1944) 24 Cal.2d 933, 938 [152 P.2d 1]; see *In re Jackson* (1964) 61 Cal.2d 500 [39 Cal.Rptr. 220, 393 P.2d 420], and the many cases therein cited.) In our case, the time for appeal had expired four days before Pickett filed his petition in habeas corpus. (See Cal.

were consistent with their testimony and with Pickett's theory at the trial in the justice court.

The transcript of the hearing on habeas corpus includes an extended colloquy between court and counsel and a stipulation or admission by Pickett's counsel to the effect that prior nonconforming use was an issue and was argued in the justice court.

Rules of Court, rule 182, which, until January 1, 1972, required that notice of appeal from a criminal judgment in the justice court shall be filed within 10 days after rendition of judgment.)

■ " '[T]he fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " *(Sequoia Pine Mills, Inc. v. Superior Court* (1968) 258 Cal.App.2d 65, 69 [65 Cal.Rptr. 353]; see *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117]; *Brown v. Brown* (1969) 274 Cal.App.2d 178, 193 [79 Cal.Rptr. 257]; *Bank of America v. Cranston* (1967) 252 Cal.App.2d 208, 221 [60 Cal.Rptr. 336].)

## The Constitutional Question(s)

### I. *Lack of Counsel at Sentencing*

■ On April 20, 1970, Pickett was arraigned for plea. At that time he was informed of his rights, including his right to counsel at every stage of the proceedings, and of the court's willingness to appoint counsel to defend him. Pickett waived counsel and requested a continuance which was granted. After several continuances a trial was held on January 12, 1971, almost nine months after Pickett's initial arraignment, with Pickett acting as his own attorney. The trial resulted in a hung jury. An amended complaint was filed charging an additional violation of the Butte County code. The case was called for trial on January 25, 1971. The minutes of the proceedings had on that day show: "Defendant present without counsel. Defendant duly arraigned on Amended complaint, waives his right to counsel and enters a plea of Not Guilty, jury trial requested." The case was again continued and ultimately tried on February 16, 1971, with Pickett again acting as his own attorney. The jury returned verdicts of guilty on both counts, and the court set March 1, 1971, for arraignment for judgment.

At this point we observe that unlike the minutes of April 20, 1970, which show that Pickett was fully advised of his rights, the minutes of January 25, 1971, do not reflect any details of what, if anything, Pickett was told by the court as to (a) his right to be represented at all stages of

the proceedings, and (b) the court's willingness to appoint counsel.[2] Nor is there anything in the record by which it can be determined that Pickett's waiver of counsel at the time of this or the earlier arraignment on April 20, 1970, was intelligent and knowledgeable.

On March 1, 1971, Pickett again appeared without counsel and requested a three-month continuance for sentencing. The minute order contains this entry: "D.D.A. Weltner opposes said request unless defendant will waive right to appeal. Defendant filed abandonment of appeal and request for continuance with consent of D.A. Cause continued for imposition of sentence to 6-15-71 at 9:15 a.m. ROR." On June 15, 1971, Pickett again appeared without counsel, refused probation, and was sentenced to 60 days in jail.

There is nothing in the minutes to indicate that Pickett was advised of his rights when he abandoned his right to appeal a judgment not yet rendered, or that he was so advised at the time sentence was pronounced on June 15, 1971. The minutes of June 15 disclose that *after* he was sentenced Pickett filed a declaration of indigency and the matter was referred to the public defender. A minute entry for June 29, 1971, four days after Pickett's time for appeal had run states, "The Court finds that the defendant is able to retain counsel and the Public Defender, Jerome Warren, is relieved as attorney of record at his request."[3]

We note that approximately 14 months elapsed between the first and only time Pickett was *fully* informed of his rights (April 20, 1970) and rendition of judgment on June 15, 1971. Assuming that Pickett's waiver of counsel on April 20, 1970, was a knowledgeable waiver, the question arises, did that waiver carry over the long intervening period and constitute a waiver of counsel at the time he purported to waive his right to appeal, and again at sentencing? We think not.

---

[2]These concepts are hereinafter collectively referred to as Pickett's "rights." They are applicable to defendant's rights in the justice court. (*In re Johnson* (1965) 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420]; *People* v. *Maldonado* (1965) 237 Cal.App.2d Supp. 902 [47 Cal.Rptr. 470].)

[3]The record is silent as to what advice, if any, the public defender gave Pickett, i.e., as to his right of appeal, if any; the taking of appropriate steps to set aside Pickett's premature "abandonment" of appeal, made without benefit of counsel and in advance of judgment, or to set the judgment aside because of the lack of counsel at the time it was rendered and the absence of a waiver at that time. For all that appears in the record, the public defender may have concluded that Pickett was not indigent and therefore not entitled to have counsel appointed, and accordingly gave him no advice. This is a reasonable inference from the court's finding that Pickett was able to retain counsel, for which reason the court relieved the public defender.

We are familiar with the case law which generally holds that where an intelligent and knowledgeable waiver of counsel has been made, it is not necessary for the court to repeat its statement of the defendant's rights in that regard at every stage of the proceedings (see *In re Turrieta* (1960) 54 Cal.2d 816 [8 Cal.Rptr. 737, 356 P.2d 681]).

We are also familiar with the large body of case law which holds that rendition of judgment is a critical stage of criminal proceedings and that, in the absence of an intelligent waiver, lack of counsel is error of constitutional proportions requiring the granting of a writ of habeas corpus on proper application. (See *In re Perez* (1966) 65 Cal.2d 224 [53 Cal.Rptr. 414, 418 P.2d 6]; *In re Turrieta, supra; People* v. *Roberts* (1953) 40 Cal. 2d 749 [255 P.2d 784]; *In re Levi* (1952) 39 Cal.2d 41 [244 P.2d 403].)

In *Turrieta, supra,* 54 Cal.2d 816, the petitioner in habeas corpus pleaded guilty to petty theft in the justice court. "The record shows she was advised of her legal rights, and . . . she, at that time, waived counsel." (*Id.* at p. 818.) Almost two years later probation was revoked, and the court sentenced her to six months in the county jail. She was not again advised of her right to counsel at the time sentence was pronounced. In granting habeas corpus and remanding the case with directions that she be rearraigned for pronouncement of judgment, the court pointed out at page 819: "There are good reasons why a defendant should be advised of his right of counsel and either then freely and understandably waive that right or be represented by counsel when sentence is pronounced. It may at that time be shown that there is good cause to believe that a defendant is insane (Pen. Code, § 1201, subd. 1), that a new trial should be ordered (Pen. Code, §§ 1181, 1201, subd. 2), or that a motion in arrest of judgment should be granted (Pen. Code, §§ 1185, 1201, subd. 2). (*In re Levi, supra,* 39 Cal.2d 41, 45 [244 P.2d 403].) Moreover a defendant has a right to appeal from the judgment. The average defendant, however, without the aid of counsel, is helpless to establish legal cause why judgment should not be pronounced against him, or properly to take his appeal. For these reasons and others the assistance of counsel at the time of sentencing is necessary in order to accord to the defendant the full advantage of his constitutional rights unless, as stated, a knowledgeable waiver of those rights has been intelligently made." (See *In re Levi, supra,* 39 Cal.2d 41.)

It is true that in *Turrieta, supra,* the court found that the defendant was confused and incapable of legally protecting herself. For that reason, and notwithstanding that she had been fully advised of her rights within two years of the pronouncement of judgment, the court held that the lack of counsel at sentencing violated her constitutional right. While the record of what transpired in the Pickett case in the justice court is meager and incomplete,

what record there is raises serious questions in our minds as to Pickett's competence and capacity to make an intelligent and understanding waiver of counsel. For example, there is nothing in the record indicating that he submitted any jury instructions on the subjects of abandonment and enlargement of his prior nonconforming use.[4] More specific instructions should have been given the jury for its guidance on those subjects. Also, plaintiff's willingness to pay the price demanded by the deputy district attorney as a condition for receiving an extended continuance for rendition of judgment, i.e., Pickett's abandonment (waiver) of his right to appeal, indicate lack of understanding of the value of preserving that right. Surely under all the circumstances of this case, no competent attorney would have recommended to Pickett that he waive his right to appeal. As an additional indication of his probable lack of understanding of what was involved when he waived counsel 14 months earlier, is the fact that he made no motions[5] prior to or when arraigned for judgment. Again, under all the circumstances, at a minimum, any competent attorney would have moved for a new trial prior to pronouncement of judgment, pursuant to Penal Code section 1182.

In the light of the foregoing, and particularly after the long interval between the one and only time Pickett was *fully* advised of his rights and rendition of judgment, we hold that the court had a duty, when arraigning Pickett for judgment, to remind him of his right to counsel at that stage of the proceedings and of the court's willingness to appoint counsel for him.

II. *Waiver of Appeal, Prior to Judgment, Without Benefit of Counsel*

This waiver was received on the district attorney's insistence, as a condition of granting Pickett a continuance for rendition of judgment. It took place 11 months after Pickett had been given his one and only full statement of his rights. The price exacted of Pickett was high indeed in the light of the record before us.

"In California, the right to appeal is granted by law to every convicted person; it is one of the most important rights possessed by a convicted defendant, and every legitimate element should be exercised in its favor." (*People* v. *Serrato* (1965) 238 Cal.App.2d 112, 115 [47 Cal.Rptr. 543]; see *People* v. *Casillas* (1964) 61 Cal.2d 344 [38 Cal.Rptr. 721, 392 P.2d 521].)

---

[4]We do not consider that the court's single instruction on the two points of abandonment and enlargement is adequate in view of the ordinance's failure to define abandonment and enlargement.

[5]If there were any motions, they are not reflected in the court's minutes.

Under the circumstances of this case it is questionable whether the waiver was truly voluntary, a condition we deem axiomatic.

Because we sustain the grant of habeas corpus upon the ground that Pickett's constitutional right to counsel at sentencing was not accorded him, and because the issue was not raised in the court below or before this court, we deem it unnecessary to decide whether his constitutional right to the assistance of counsel was denied when he was not again advised of that right before waiving his right to appeal. We suggest, however, that where, as here, a long period of time has elapsed between the time a defendant was fully informed of his rights and his appearance at any subsequent critical stage of the proceedings without benefit of counsel, the court should remind the defendant of his rights.

A remaining and more difficult aspect of the case is the fact that though insisting throughout that Pickett is entitled to a writ of habeas corpus, his attorney has not predicated the asserted right on any clearcut constitutional ground. The court below repeatedly suggested to counsel that constitutional grounds of the character discussed herein appeared to be present for granting the writ. Counsel responded that he was aware of that possibility but, in effect, he insisted that the ordinances did not apply to Pickett because of his prior nonconforming use, and therefore the justice court lacked jurisdiction to apply the ordinance to him.[6] As we have pointed out, that question could only be determined by a trial on the merits, and if the evidence supported Pickett's position, and he was nevertheless convicted, as he was, his remedy was by direct appeal.

It is settled that "Although, . . . an attorney representing a criminal defendant has the power to control the court proceedings [citations], that power may not be exercised to deprive a defendant of certain fundamental rights [citations]." *(People* v. *Robles* (1970) 2 Cal.3d 205, 214 [85 Cal.Rptr. 166, 466 P.2d 710].) "An attorney ordinarily may waive his client's rights as to matters of trial tactics and control the proceeding [citations], although he may not deprive the defendant of certain fundamental rights [citations]." *(People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008].)

The fundamental right of the assistance of counsel at sentencing was present in this case and was not accorded. Pickett's attorney should have urged it in his petition for habeas corpus, and, most certainly, he

---

[6]We believe that *In re Zerbe* (1964) 60 Cal.2d 666 [36 Cal.Rptr. 286, 388 P.2d 182], on which Pickett's counsel chiefly relies, is readily distinguishable. There was no disputed question of fact in that case. The issue was solely one of law.

should have adopted the repeated suggestions of the court to do so in those proceedings. To incarcerate Pickett for the balance of his 60-day sentence, because of his attorney's obduracy in what amounted to his waiver of Pickett's constitutional rights, would be a gross miscarriage of justice.

It is ordered that petitioner be rearraigned in the justice court for sentencing. At that time and place, hopefully with benefit of counsel, Pickett may make appropriate motions, including, but not necessarily limited to, (1) a motion to be relieved of his waiver of his right to appeal, and (2) a motion for a new trial (Pen. Code, § 1182).

Richardson, P. J., and Regan, J., concurred.