[No. B012192. Second Dist., Div. Five. May 16, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
EUGENE NICHOLAS DOLLIVER et al., Defendants and Appellants.

[No. B016762. Second Dist., Div. Five. May 16, 1986.]

In re EUGENE NICHOLAS DOLLIVER on Habeas Corpus.

**COUNSEL**

Phillip I. Bronson and Jeffrey S. Blanck, under appointments by the Court of Appeal, for Defendants and Appellants and Petitioner.

John K. Van de Kamp, Attorney General, and Andrew D. Amerson, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ASHBY, Acting P. J.**—In the process of robbing a jewelry store, appellants Dolliver and Seide confined the store owner, an employee, and a customer to a small bathroom in the store. In a nonjury trial they were found guilty as charged of robbery and two counts of false imprisonment. In addition, each appellant was found to have personally used a firearm and to have suffered two prior felony convictions. Each appellant was sentenced to state prison for fifteen years, consisting of a midterm of three years for robbery, two years for use of a firearm, and five years each for their two prior felony convictions pursuant to Penal Code section 667, subdivision (a). Remaining portions of the sentence were stayed pursuant to Penal Code section 654.

Vincent Romo owned and operated Romo Jewelers located at Artesia Boulevard and Van Ness in Torrance. About 11 a.m. on November 16, 1983, he was in the store with his employee, Natalie Eldridge, and a customer, Friedwald Lewin. Appellant Seide entered the store and asked to see a ring for about $150. Mr. Romo and Mr. Lewin went to a back room while Ms. Eldridge helped Seide at a display case.

Seide then grabbed Ms. Eldridge by the neck and pushed her into the workroom, holding a silver revolver, People's exhibit 1, on all three victims and screaming, "This is a robbery." The victims were herded into a bathroom, but while in the bathroom Mr. Romo pressed a button activating a silent alarm which alerted the alarm company and the police.

Mr. Romo was then brought out to the showroom where he discovered appellant Dolliver stuffing jewelry into a large bag. Dolliver had an automatic pistol, People's exhibit 2. Mr. Romo was taken back into the bathroom. From the bathroom, he heard the telephone ring. One of the robbers answered the phone and said the owner was not in or was busy. A minute later the telephone rang again. At gunpoint Mr. Romo was brought to the phone and told that he had better give the right answer. His alarm company, American Protection Industries, was on the line. Mr. Romo said, "I am busy right now. You must have the wrong number," and he hung up. From an open safe, Dolliver removed more merchandise and put it in the bag, which was like a shoulder bag or pillow case. Mr. Romo went back into the bathroom, where the victims remained for about three minutes until discovering that the robbers were gone.

Undercover Officer Michael Dershan of the Torrance Police Department was on duty in the vicinity in an unmarked vehicle when he heard a radio broadcast of the silent alarm at Romo's Jewelers. He heard two subsequent radio broadcasts that the communications center had attempted to call the store and the phone was hung up, and that upon another attempt to contact the store someone had answered the phone and stated the owner was in the bathroom. In the officer's experience if a silent alarm is a false alarm the owner tells the police, and difficulty in establishing contact with the owner usually indicates a robbery is in progress.

Sergeant Dershan proceeded to the intersection where the store was located and saw appellants about 10 to 15 feet from the doorway of the jewelry store, walking from the direction of the jewelry store. There was no other foot traffic. Seide was carrying a large bag over his shoulder. In Sergeant Dershan's experience, jewelry store robbers normally use a bag to carry the stolen jewelry.

Appellants were walking rapidly, with a worried and intent look on their faces. Repeatedly looking back toward the jewelry store, appellants reached the sidewalk on the corner and broke into a trot toward a white Cadillac. Dolliver entered the driver's side and Seide the passenger's side, and Dolliver drove the car away.

Suspecting that appellants had robbed the jewelry store, Sergeant Dershan followed the Cadillac and notified other police units. At 164th and Van Ness, Sergeant Dershan and two black-and-white units surrounded appellants' car and activated their red lights. Dolliver attempted to back up the Cadillac but was blocked by the black-and-white units. Dolliver got out of the car and ran. Dolliver was chased by Sergeant Dershan and Officer Espinoza and captured and arrested a block and a half away. An automatic pistol, People's exhibit 2, was in his pocket.

Meanwhile, Seide refused to comply with the commands of Officer Margolin to keep his hands outside the window. Seide leaned down and attempted to drive the Cadillac away at high speed but crashed into a parked car. Seide got out and ran but was apprehended by Officer Conahan.

On the floorboard of the Cadillac, visible through the window, were the bag of jewelry, partially spilled, which had been stolen from Romo's Jewelers, and also the loaded revolver, People's exhibit 1, used by Seide in the robbery.

### DISCUSSION

Dolliver and Seide have filed separate briefs on appeal. In addition, Dolliver has filed a petition for writ of habeas corpus.

*Dolliver's Appeal.*

Dolliver first contends the police had insufficient grounds to stop appellants in the Cadillac as they were leaving the scene, and that therefore appellants' flight and the other evidence obtained upon their arrest should have been suppressed as fruits of an unlawful detention. This argument is wholly erroneous, and is based on misconception as to the evidence and as to the applicable legal test. On a motion pursuant to Penal Code section 1538.5, the trial court sits as a trier of fact, and on appeal all conflicts in the evidence and questions of credibility of witnesses must be resolved in favor of the trial court's ruling. (*People* v. *Superior Court (Peck)* (1974) 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829].) Thus, appellant's claim that Sergeant Dershan did not see appellants until they entered their car or was too far away to see their faces is contrary to the facts as impliedly found by the trial court.

An investigative detention is lawful where there are specific and articulable facts which reasonably cause the officer to believe that (1) some activity out of the ordinary had taken place or was occurring or was about to occur; (2) the activity was related to crime; and (3) the individual under suspicion was connected to the activity. (*People* v. *Bower* (1979) 24 Cal.3d 638, 644 [156 Cal.Rptr. 856, 597 P.2d 115].) We need not repeat the facts recited at pages 54-55, *ante,* to belabor the obviously sufficient grounds for Sergeant Dershan's reasonable suspicion that a robbery of the jewelry store had just occurred and that appellants were involved. Appellant argues that the circumstances surrounding the silent alarm did not prove a robbery had taken place and that appellants could have been legitimately coming from any of several businesses nearby. But the possibility that the circumstances are consistent with lawful activity does not render a detention invalid, where the circumstances also raise a reasonable suspicion of criminal activity. The public rightfully expects a police officer to inquire into such circumstances; indeed the principal function of the investigative stop is to resolve that ambiguity. (*In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].)

Dolliver next contends that the trial court should have excluded the in-court identification of Dolliver by Mr. Romo. His argument makes no sense and the authorities cited by him have no application. He argues that shortly after the crime Mr. Romo was shown some mug shots, and that although he identified a photo of appellant Seide, he identified a photo of someone other than Dolliver as the second robber. He then cites authorities relating to unreasonably suggestive identification procedures and says the record does not show that the photographic lineup was not unduly suggestive. However, a photo procedure in which a victim picked someone other than

appellant could not possibly be construed as singling out appellant in an unreasonably suggestive way. Mr. Romo positively identified appellant at trial and at the preliminary hearing. Appellant's trial counsel brought out the fact of the inconsistent photo identification, for what it was worth. The record shows no reason for suppressing the in-court identification.

■ Dolliver received enhancements to his sentence for two prior felony convictions, suffered in 1973 and 1976. He contends that enhancing his sentence pursuant to Penal Code section 667, subdivision (a), enacted as part of Proposition 8 in 1982, punishes him for past crimes in violation of constitutional prohibitions against ex post facto laws. This contention was rejected by the California Supreme Court in *People* v. *Jackson* (1985) 37 Cal.3d 826, 833 [210 Cal.Rptr. 623, 694 P.2d 736]. Appellant's increased penalties "'. . . arise as an incident of the subsequent offense rather than constituting a penalty for the prior offense.'" (*Id.*)

■ In a supplemental brief Dolliver contends "the case must be remanded to allow the trial court to decide whether to exercise its discretion under Penal Code section 1385 to strike or stay the five-year enhancements" for prior felony convictions.

■ Contrary to appellant's contention, the record does not require any remand. In *People* v. *Fritz* (1985) 40 Cal.3d 227 [219 Cal.Rptr. 460, 707 P.2d 833], the Supreme Court held that the enactment of Penal Code section 667 as part of Proposition 8 did not eliminate a trial court's power to strike a prior conviction pursuant to Penal Code section 1385 for purposes of sentencing. However, in *Fritz* the matter was remanded to the trial court "[b]ecause the record reveals that in this case the trial court erroneously believed it had no discretion to strike the prior . . . ." (*Id.,* at p. 229.) There is no such record in the instant case. Appellant did not ask the trial court to exercise discretion to strike the prior, nor did the trial court make any statement indicating it believed it had no discretion. Long before the date of appellant's sentencing hearing, the reasoning of *Fritz* was anticipated in *People* v. *Lopez* (1983) 147 Cal.App.3d 162, 164-165 [195 Cal.Rptr. 27] (hg. den.). (See *People* v. *Jacob* (1985) 174 Cal.App.3d 1166, 1174 [220 Cal.Rptr. 520].) In the absence of any statements by the trial court to the contrary, it is presumed the trial court knew and applied the correct law. (*People* v. *Martinez* (1985) 175 Cal.App.3d 881, 891 [221 Cal.Rptr. 258].) The record gives no indication the trial court was unaware of its power under Penal Code section 1385, and in this circumstance appellant fails to sustain his burden of demonstrating error in the record. (*People* v. *Martinez, supra; People* v. *Courtney* (1985) 174 Cal.App.3d 1004, 1006-1007 [220 Cal.Rptr. 328].)

*Dolliver's Petition.*

While this appeal was pending Dolliver filed in this court a petition for writ of habeas corpus alleging that he was deprived of the effective assistance of trial counsel. (See *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) He alleges various complaints about the conduct of his trial attorney, but none of the factual circumstances alleged comes anywhere near establishing that his attorney failed to act with reasonable competence or that any conduct of his attorney deprived him of a meritorious defense or seriously prejudiced the defense. (*People* v. *Pope, supra,* 23 Cal.3d at p. 424; *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583-584 [189 Cal.Rptr. 855, 659 P.2d 1144].)

A casual reader of the petition's complaints about the various motions trial counsel failed to make should not lose track of the basic reality shown by the record in this case: thanks to a silent alarm activated during the robbery, the police were on hand when appellants left the store with the bag of stolen jewelry over the shoulder, and appellants were followed as they drove away from the scene, they fled upon being stopped by the police, ran from their vehicle which contained the bag of stolen jewelry and one of the guns used in the robbery, and the other gun was recovered upon Dolliver's arrest. In the context of this record, the allegations of the petition are both abstract and insignificant.

For instance, a major portion of the petition is devoted to a theory that trial counsel should have moved to suppress the in-court identification of petitioner by Mr. Lewin, the customer in the store. Petitioner contends that at the first of two preliminary hearings Mr. Lewin identified the second robber in court as "the man with the grey hair and the mustache . . . . [¶] . . . . [¶] [S]itting right there," which the preliminary hearing judge characterized on the record as "[i]dentifying the defendant Dolliver." Petitioner contends that one of the attorneys sitting at the counsel table had gray hair and a mustache, and that petitioner had brown hair, and that therefore this was a misidentification which irreparably tainted all subsequent in-court identifications by Mr. Lewin.

In the first place, counsel may well have reasonably concluded that a motion to suppress all subsequent identifications as "tainted" by this alleged mistake would have no chance of success. At trial, counsel did in fact impeach Mr. Lewin on this matter, but Mr. Lewin explained it by saying that Dolliver's hair looked gray to him at the time of the robbery. In any event the identification by Mr. Lewin was insignificant in light of the fact that the primary victim, Mr. Romo, identified Dolliver, and in light of the overwhelming evidence establishing petitioner's guilt as he was caught

redhanded leaving the scene. There was no reason for counsel to clutter the record with a frivolous motion. (See *In re Lower* (1979) 100 Cal.App.3d 144, 149-150 & fn. 3 [161 Cal.Rptr. 24].)

Petitioner contends that one of the public defenders who represented him at an earlier stage of the case never "launched an investigation for a defense of a meritorious nature." What meritorious defense? Petitioner never tells us that he had any meritorious defense that was not investigated.

Petitioner contends his counsel never made a *Beagle* motion (see *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]; *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]) but petitioner never says he wanted to testify free of impeachment by his prior felony convictions. Moreover, since this was a court trial, the trier of fact was going to be aware of his prior convictions anyway. (*In re Lower, supra,* 100 Cal.App.3d at p. 150.)

Petitioner contends his counsel did not obtain records of his prior convictions so as to be "prepared to challenge the validity of the alleged prior felony convictions" and that he did not move to challenge the prior convictions. But petitioner never tells us there was any invalidity to his prior convictions which could be exposed.

Petitioner contends counsel did not request the court at the time of sentencing to exercise its discretion pursuant to Penal Code section 1385 to strike the priors for purposes of sentencing. (See p. 57, *ante.*) There is no reason to think there was any possibility the court would have exercised such discretion in petitioner's favor. The transcript of the sentencing hearing indicates that both defense counsel recognized, in light of appellants' bad records, that the best sentence the defense could hope for was a slightly-less-than-maximum 15 years, which had apparently been offered by the district attorney during prior plea bargain negotiations, and which appellants in fact received.

Petitioner contends, somewhat inconsistently, that at the early stages of the case he was not informed of the status of the plea bargain negotiations, and on the other hand that he was informed he might get a bargain for eight and a half to nine and a half years, but that the district attorney insisted on fifteen. Nothing in this allegation indicates either incompetence of counsel or an irreparable breakdown of the attorney-client relationship as contended by petitioner.

Finally, citing *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], petitioner contends the trial court did not sufficiently

inquire or give sufficient consideration when petitioner raised some of these complaints in a pretrial motion to relieve his public defender and have a private counsel appointed, and in a letter in the nature of a motion for new trial at the time of sentencing. There is no merit to this contention. As to the pretrial motion, petitioner set forth his contentions in detail in an 11-page handwritten document which the court read and considered. Petitioner expressly stated in open court at that time that he wished to submit the motion on "the document on its four corners." Later the trial court also read and considered the handwritten letter/motion for new trial, which merely reiterated the contention about Mr. Lewin's preliminary hearing identification.

In sum, nothing whatsoever is alleged in the habeas corpus petition which would entitle petitioner to relief on grounds of ineffective assistance of counsel.

*Seide's Appeal.*

The prosecution alleged, and the court found true, that Seide had suffered two prior felony convictions, for which he was sentenced pursuant to Penal Code section 667, subdivision (a). Prior to trial he moved that the first of these priors, a 1975 conviction of first degree robbery based on a guilty plea, should be stricken on the ground that it was "constitutionally invalid in that the record does not reflect an intelligent and knowing waiver of defendant's constitutional rights." We hold the trial court properly denied this motion.

The reporter's transcript of the November 1974 guilty plea proceedings clearly establishes appellant's express waivers of the constitutional rights to jury trial, confrontation, and against self-incrimination. Appellant contends, however, that the record of the guilty plea proceedings was inadequate because "defendant's plea was not made knowingly and intelligently because he did not understand the nature of the charges against him" and "because there was no factual basis on the record for defendant's plea." On the contrary, appellant failed to establish either of these grounds for striking the prior conviction.

On a motion to strike a prior conviction alleged for purposes of sentencing enhancement, a defendant must allege actual denial of his constitutional rights; he may not rely on mere silence of the record. (*People* v. *Sumstine* (1984) 36 Cal.3d 909, 922-923 [206 Cal.Rptr. 707, 687 P.2d 904].) The record of the plea proceedings establishes that appellant was charged with robbery and that he voluntarily pleaded guilty to first degree robbery, understanding that the maximum sentence for first degree

robbery was five years to life. He contends that the record does not show that the elements of first degree robbery were explained to him or discussed with his attorney. ▮▮ The law does not require that an express discussion of the elements of the offense be contained in the transcript nor even an express statement that the elements have been discussed with counsel. (*Henderson* v. *Morgan* (1976) 426 U.S. 637, 647 & fn. 18 [49 L.Ed.2d 108, 115-116, 96 S.Ct. 2253]; *In re Ronald E.* (1977) 19 Cal.3d 315, 324 & fns. 6, 7 [137 Cal.Rptr. 781, 562 P.2d 684].) ▮▮ In order to carry his burden on a motion to strike the prior conviction, the defendant must establish that he did not at the time of the plea understand the charges against him. (*Henderson* v. *Morgan, supra,* 426 U.S. 637, 647 & fn. 18 [49 L.Ed.2d 108, 116]; *People* v. *Sumstine, supra,* 36 Cal.3d at pp. 922-923.)

▮▮ In this case, at the hearing on the motion to strike the prior conviction, appellant admitted upon being examined by the trial court that at the time of the plea he knew what a robbery was, knew the elements of robbery, the degrees of robbery including robbery with a weapon, and "how the complaints read when they filed them. They file a complaint and it says 'Did willfully and unlawfully take from somebody something by force or fear,' or something like that." At the conclusion of the hearing the trial court found, "I have no question in my mind that he knew what a robbery was back then." Thus the trial court found against appellant that appellant had failed to sustain his burden on this issue.

▮▮ There is even less substance to appellant's second ground that "there was no factual basis on the record for defendant's plea." Appellant does *not* allege that there *was* no factual basis for the plea, only that it was not placed upon the record of the plea proceedings. This is not enough. On a collateral attack such as this the defendant must establish that there was no factual basis for the plea, and in the absence of such a showing of actual prejudice, it is presumed that there was a factual basis for the plea. (*In re Gross* (1983) 33 Cal.3d 561, 567-568 [189 Cal.Rptr. 848, 659 P.2d 1137]; *Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522, 530-532 [145 Cal.Rptr. 636]; *People* v. *Watts* (1977) 67 Cal.App.3d 173, 178-182 [136 Cal.Rptr. 496].)[1] Here appellant did not even allege, much less establish, the necessary showing.

▮▮ Finally, appellant contends the trial court denied his motion upon an improper ground that an appeal had been taken in the 1975 case. Actually,

---

[1] Two cases cited by appellant at oral argument are not in point because they were direct appeals from the challenged plea, not collateral attacks on a prior conviction. (*People* v. *Tigner* (1982) 133 Cal.App.3d 430, 435 [184 Cal.Rptr. 61]; *People* v. *Camenisch* (1985) 166 Cal.App.3d 594, 602 [212 Cal.Rptr. 616].)

the court was correct if it had in mind the principle stated in *People* v. *Sumstine, supra,* 36 Cal.3d at page 923, that upon a collateral attack as distinguished from direct appeal from the initial conviction, "the defendant is not unduly burdened by a demand that he now allege actual denial of his rights rather than rely on mere silence of the record." (Fn. omitted.) But in any event, since appellant established no grounds for striking the prior conviction, the court's ruling was correct regardless of its reasoning. (*In re Pickett* (1972) 25 Cal.App.3d 1158, 1163 [102 Cal.Rptr. 487].)

The judgments are affirmed. The petition for writ of habeas corpus is dismissed.

Hastings, J., and Eagleson, J., concurred.