Filed 6/5/15  P. v. Taylor CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061081 |
| v. | (Super.Ct.No. FSB1302599) |
| MONTRELL LAMONTE TAYLOR, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  R. Glenn Yabuno, Judge.  Affirmed.

Eric A. Dumars, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Montrell Lamonte Taylor was charged by information with possession of ammunition. (Pen. Code, § 30305, subd. (a)(1), count 1.) The information also alleged that defendant was prohibited from owning or possessing a firearm, having been previously convicted of certain offenses. (Welf. & Inst. Code, §§ 8100, 8103.) It was further alleged that defendant had one prior strike conviction (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)) and that he had served three prior prison terms. (Pen. Code, § 667.5, subd. (b).) Defendant moved to suppress the prosecution's evidence against him. (Pen. Code, § 1538.5.) The trial court denied the motion. Defendant then pled guilty to count 1 pursuant to a plea agreement. Upon the People's motion, the court dismissed the remaining allegations. The court sentenced defendant to two years in state prison with credit for time served. The court subsequently acknowledged that defendant had served his sentence in full and released him from custody.

On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence, since the police were not justified in detaining him and subsequently searching his car. We disagree and affirm.

FACTUAL BACKGROUND

The following statement of facts is derived from the hearing on the motion to suppress: Officer Brian Olvera was patrolling an area near a specific apartment complex in San Bernardino, where he had observed people loitering the day before. That area had a high volume of PCP sales and possession arrests, and the apartment complex was

2

known for its high amount of narcotics and gang-related activity. There were several "'no loitering'" signs posted in the apartment complex. Officer Olvera had just seen defendant loitering at that apartment complex the day before, and had warned him not be at that location. He had also contacted defendant the week prior, concerning him being at that location. Officer Olvera went to the complex on the evening of March 6, 2013, and he observed six to eight individuals, including defendant, in front. They were all huddled around what appeared to be a game, where they were rolling dice on the ground and yelling with regard to certain rolls of the dice. They had money in their hands. As he got closer, Officer Olvera noticed that several of the subjects had open alcohol containers. He noticed some open containers near defendant. Officer Olvera testified that there was a municipal code in the City of San Bernardino prohibiting gambling, loitering, and having open containers of alcohol in public.

After observing the municipal code violations, Officer Olvera pulled his patrol car up to the front of the apartment complex. He used his white lights and spotlight to illuminate the males gathered in front. He then got out of his patrol car to contact the subjects. Officer Olvera and his partner wanted to detain everyone who was there to cite them. Officer Olvera's attention was immediately drawn to defendant when he observed him duck down behind several other males and then run back toward a white van. Defendant appeared to be holding something, and Officer Olvera's partner yelled out, "He has a gun." Defendant ran around the front portion of the van and ducked down, out of Officer Olvera's view. Officer Olvera went around the other end of the van to contact

3

him and yelled, "Stop. Police." Defendant failed to comply with the command. Officer Olvera continued to pursue defendant and approached the driver's side door, which was open. Defendant was hunched over in the doorway of the van. Once Officer Olvera was facing defendant, he told him to show his hands since they were out of view. At that point, Officer Olvera saw defendant toss or place something in the van. The officer asked him to show his hands again. Defendant did not immediately respond, but he eventually showed his hands. Once defendant did so, Officer Olvera asked him to turn around so he could place him in handcuffs.

When Officer Olvera initially observed defendant standing in the doorway of the van, he observed a glass vial in the door panel, in plain view. The vial had a black plastic top, was about three inches tall, and contained a liquid substance. Inside the liquid was some debris from cigarette tobacco. Officer Olvera was trained in recognizing PCP, including its substance, color, and packaging. Based upon his training and experience, Officer Olvera knew that PCP was normally packaged in either a plastic or glass vial. He had also seen cigarette debris inside vials on his prior arrests. He said it was common practice to ingest PCP by use of a cigarette; people dipped cigarettes into PCP in order to smoke and ingest the PCP. He thus recognized that the substance in the vial was consistent with PCP. Officer Olvera searched the van for more drugs. While searching, he located two shotgun shells in a cubby compartment in the rear of the van.

4

ANALYSIS

The Trial Court Properly Denied the Motion to Suppress

Defendant argues that the trial court erred in denying his motion to suppress the evidence of the shotgun shells.  He contends Officer Olvera lacked reasonable suspicion to detain him.  Even if the detention was lawful, he argues that the warrantless search of his van was unlawful.  As a result, he claims the shotgun shells should have been suppressed.  We disagree.

A.  *Standard of Review*

In reviewing the denial of a motion to suppress evidence, "we defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.  [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

B.  *The Detention Was Reasonable*

At the outset, we note defendant's argument that he was not involved in a consensual encounter with the police.  The trial court did not make a determination about whether or not the encounter between defendant and Officer Olvera was consensual.  Instead, the court just found that the officer detained defendant.  Assuming arguendo that the encounter was not consensual, we agree with the trial court that the detention was lawful.

"An investigative detention is lawful where there are specific and articulable facts which reasonably cause the officer to believe that (1) some activity out of the ordinary had taken place or was occurring or was about to occur; (2) the activity was related to crime; and (3) the individual under suspicion was connected to the activity." (*People v. Dolliver* (1986) 181 Cal.App.3d 49, 56.) In other words, "[a] detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).) The reasonable suspicion standard "is not a particularly demanding one, but is, instead, 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146.) "'[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.' [Citation.] Further, as the high court repeatedly has explained, the possibility of innocent explanations for the factors relied upon by a police officer does not necessarily preclude the possibility of a reasonable suspicion of criminal activity." (*Id*. at p. 146.)

Defendant argues that his detention was illegal because it was unsupported by specific, articulable facts. We disagree. Officer Olvera detained defendant because he observed several municipal code violations. Specifically, he observed defendant loitering in front of an apartment complex where he had just warned defendant not to loiter the day before. He also observed defendant with a group of males participating in a dice game.

They were all huddled around, holding money in their hands, rolling the dice on the ground, and yelling and screaming. Officer Olvera additionally observed that several of them were holding open alcohol containers, and he saw defendant near the open containers. There were municipal codes in San Bernardino against loitering, gambling, and having open alcoholic containers in public. Thus, Officer Olvera could have detained defendant on these facts alone, since they "provide[d] some objective manifestation that the person detained may be involved in criminal activity." (*Souza*, *supra*, 9 Cal.4th at p. 231.)

Furthermore, when Officer Olvera got out of his patrol car to contact the subjects, his attention was immediately drawn to defendant. He recognized defendant from previous contacts, and he noticed defendant duck down behind the other males and then run away toward a van. Officer Olvera considered these movements suspicious. "[E]ven though a person's flight from approaching police officers may stem from an innocent desire to avoid police contact, flight from police is a proper consideration—and indeed can be a key factor—in determining whether in a particular case the police have sufficient cause to detain." (*Souza*, *supra*, 9 Cal.4th at p. 235.) The other factor that caught Officer Olvera's attention was that defendant appeared to be holding something, and Officer Olvera's partner yelled out, "'He has a gun.'"

Moreover, when Officer Olvera pursued defendant and yelled, "'Stop. Police.'" Defendant failed to comply with his command. Then, when Officer Olvera caught up with defendant at the van and told him to show his hands, Officer Olvera saw him toss or

7

place something in the van. "This penchant for flight, coupled with the toss of an item during a police pursuit is certainly suggestive of wrong doing. It supports the reasonable suspicion requirement for a lawful detention." (*People v. Rodriguez* (2012) 207 Cal.App.4th 1540, 1544.)

Defendant claims that Officer Olvera "did not testify to any reasonable articulable facts indicating that [he] committed an infraction." He further argues that "[s]uspicion of [his] involvement in these city infractions appear[ed] objectively unreasonable." In his reply brief, defendant asserts that the officer did not know if he was present in the apartment complex with permission of the residents. However, as discussed *ante*, defendant was observed in a high crime area, participating in what appeared to be gambling, and was near open alcohol containers. "An area's reputation for criminal activity is an appropriate consideration in assessing whether an investigative detention is reasonable under the Fourth Amendment." (*Souza*, *supra*, 9 Cal.4th at p. 240.) Moreover, "the possibility that the circumstances are consistent with lawful activity does not render a detention invalid, where the circumstances also raise a reasonable suspicion of criminal activity. The public rightfully expects a police officer to inquire into such circumstances; indeed the principal function of the investigative stop is to resolve that ambiguity." (*People v. Dolliver*, *supra*, 181 Cal.App.3d at p. 56.)

Considering all of the circumstances, Officer Olvera had reasonable suspicion to detain defendant and investigate.

8

C. *The Search of Defendant's Van Was Lawful*

Defendant next argues that, even if the detention was reasonable, Officer Olvera lacked probable cause to search his van without a warrant. We disagree.

"Under the automobile exception, police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found. [Citations.] Such a search 'is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.' [Citation.] . . . 'If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.'" (*People v. Evans* (2011) 200 Cal.App.4th 735, 753.) "Probable cause to search thus exists when the 'known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found . . . .'" (*Ibid.*) In other words, "[p]robable cause to search is 'a fair probability that contraband or evidence of a crime will be found in a particular place . . . .'" (*People v. Hunter* (2005) 133 Cal.App.4th 371, 378.)

Here, the People established that probable cause existed to search defendant's van pursuant to the automobile exception. When Officer Olvera caught up to defendant at the van, he observed defendant standing in the doorway of the van. Directly next to where defendant was standing, Officer Olvera observed a glass vial in the door panel, in plain view. The vial contained a liquid substance with cigarette tobacco debris. Based upon

his training and experience, Officer Olvera believed the substance in the vial was PCP. He knew from his training and experience that PCP was normally packaged in either a plastic or glass vial. He had observed the partial debris of cigarettes inside vials of PCP on prior arrests. Since he believed the vial contained PCP, it was reasonable for him to search the van for more drugs. He knew that drugs could be stored in various locations, as he had previously seen narcotics stored for transportation inside small compartments in vehicles. Thus, it was also reasonable for him to search the compartments in defendant's van. While searching, Officer Olvera located the two shotgun shells in a cubby compartment in the rear of the van.

Defendant contends that Officer Olvera merely found "an innocuous brown liquid in suspect packaging," and that he gave a "very broad and unspecific accounting" of his experience in identifying drugs. Defendant further asserts that Officer Olvera "did not name a single time when he found actual PCP in a similar package." Defendant claims that the packaging "could have been anything," such as menthol flavoring, massage oil, or smoking oil. In support of his argument, he cites *Thomas v. Superior Court* (1972) 22 Cal.App.3d 972 (*Thomas*). However, *Thomas* is distinguishable. In that case, a police officer stopped a vehicle to ascertain the identities of the persons in it. (*Id.* at p. 975.) The officer observed a "hand-rolled cigarette in white paper" on the back seat. (*Ibid.*) Based on that observation, the officer arrested the defendant for possession of marijuana. He then entered the defendant's car and seized the cigarette. (*Ibid.*) The appellate court held that the arrest for possession and seizure of the cigarette were unlawful because

10

there was no evidence of circumstances indicating that the cigarette contained marijuana. (*Id*. at pp. 979-980.) The court noted that there was no evidence concerning the circumstances, or the officer's prior experience in telling the difference between the appearance of hand-rolled tobacco cigarettes and hand-rolled marijuana cigarettes. (*Id*. at p. 976.) The court also stated that it was "inherently impossible for the contents of a closed opaque container to be in plain view . . . ." (*Id*. at p. 977.)

In contrast, here, Officer Olvera specifically testified about his prior experience and training in identifying PCP. He stated that he had completed the San Bernardino County Sheriff's Academy, and had since had ongoing training with other organizations such as the California Narcotics Officer's Association. He also said he had been involved in countless arrests regarding possession and transportation of controlled substances, including PCP. Furthermore, Officer Olvera testified that, on prior arrests, he had seen cigarette debris inside glass vials containing liquid PCP. He further explained how users commonly ingested PCP by use of a cigarette. Moreover, we note that the cigarette in *Thomas* was covered by white paper, which made it impossible for the officer to know, or even suspect, that it was a marijuana cigarette. Here, the glass vial was clear, and the contents of it were plainly visible to Officer Olvera. In other words, the evidence established what led Officer Olvera to form his opinion that the vial contained PCP.

In sum, defendant was observed loitering in an area where he had been warned not to loiter, he was seen participating in what appeared to be a dice gambling game, and he was near open alcohol containers. Then, when the police approached, he ducked behind

11

his cohorts and ran away. In addition, Officer Olvera's partner thought defendant had a gun, and defendant failed to comply with Olvera's commands to stop running. Thus, Officer Olvera had reasonable suspicion to stop defendant and investigate. Furthermore, the police were justified in searching defendant's van. They had probable cause to believe it contained contraband, based on Officer Olvera's observation of a vial containing what appeared to be liquid PCP in the door of the van. Thus, since Officer Olvera acted in an objectively reasonable manner in stopping and detaining defendant for investigation, the trial court properly denied the motion to suppress evidence. (See *People v. Conway* (1994) 25 Cal.App.4th 385, 390.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.