[Crim. No. 15135. First Dist., Div. Three. Feb. 16, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
DARNELL WATTS, Defendant and Appellant.

**COUNSEL**

Greil & McCartin and George P. McCartin for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack W. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and John H. Sugiyama, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTT, Acting P. J.**—Darnell Watts was convicted of violation of Penal Code section 187, murder in the second degree, upon his plea of guilty.

He thereafter moved to withdraw his plea and reinstate his plea of not guilty, which motion was denied. Watts appeals from the judgment of conviction, having satisfied the requirements of Penal Code· section 1237.5.

Watts was arraigned on June 13, 1975, and entered pleas of not guilty to charges of violation of Penal Code section 187, murder, and Penal Code section 664, attempted violation of Penal Code section 211, robbery. On August 11, 1975, Watts entered into a plea bargain with the district attorney, consented to by the court, resulting in his plea of guilty to second degree murder. The second count was dismissed pursuant to the bargain. On August 20, 1975, Watts moved to withdraw his guilty plea, alleging irregularities hereinafter discussed. The motion was denied. Watts was sentenced to prison for the term prescribed by law, subject to the youthful offender provisions of Penal Code section 1202b.

The record reveals that on August 7, 1975, Watts' attorney approached the prosecuting attorney and asked if he was interested in negotiating a plea. The prosecutor said that he was not. The following day at the pretrial conference, the prosecuting attorney made an offer regarding Watts' codefendant, Donald Fontaine, but made no offer to Watts.

On the morning of August 11, 1975, the prosecutor informed Watts' attorney that Fontaine had decided to plead guilty and would testify in the trial against Watts and his codefendant, Emanuel Maxey. The prosecutor then stated that he would attempt to get approval of a plea bargain with Watts under which Watts would plead guilty to second degree murder.[1] The offer was made to Watts at approximately 11:30 a.m. At 11:50 a.m. Watts' attorney told the court that they were "considering the offer . . . but since it was only made recently and Mr. Watts' parents are on their way down to speak to him, he would like the opportunity to discuss it with them before making a final decision." The court acceded to appellant's request. At 12:35 p.m. the proceedings resumed, wherein Watts entered a plea of guilty to second degree murder. Before entry of the plea, the record shows, Watts affirmatively waived his privilege against self-incrimination, the right to trial by jury, and the right to confrontation by and cross-examination of witnesses.

---

[1] In his declaration, appellant's trial attorney averred that at this point the trial judge stated that if the offer was made and not accepted, Watts would be put on trial ahead of Maxey. The reporter's transcript contains no reference to any such statement by the court.

I. ■ The principal thrust of this appeal concerns the nature and scope of the inquiry which must be made by the trial court as to the factual basis for a plea of guilty pursuant to Penal Code section 1192.5. Watts contends that the court did not adhere to the requirements of Penal Code section 1192.5 in the taking of his guilty plea. Section 1192.5 provides, in pertinent part, that upon a plea of guilty which is a part of a plea bargain, the "court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and *that there is a factual basis for such plea.*" (Italics added.) ■ An agreement between the People and the defendant which is approved by the court, wherein a charge of murder is fixed at second degree and an attempted robbery charge is dismissed in exchange for the defendant's plea of guilty, is a plea bargain contemplated by the provisions of Penal Code sections 1192.1, 1192.2, 1192.4 and 1192.5. (*People* v. *Orin* (1975) 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193]; see *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409].)

■ Watts does not contend that there was no factual basis for his plea, but argues that because the trial court failed to make an on the record inquiry as to the factual basis, he should be permitted to withdraw his plea.

We find no California case which defines the nature and scope of the inquiry to be made by the trial court as to the factual basis for the plea under Penal Code section 1192.5. ■ The purpose of the requirement is to protect against the situation where the defendant, although he realizes what he has done, is not sufficiently skilled in law to recognize that his acts do not constitute the offense with which he is charged. (1 Wright, Federal Practice and Procedure (1969) § 174, pp. 376-377.) Inquiry into the factual basis for the plea ensures that the defendant actually committed a crime at least as serious as the one to which he is willing to plead. "In addition, these inquiries provide a more adequate record of the conviction process; this record minimizes the chances of a defendant successfully challenging his conviction later [citation], and also aids correctional agencies in the performance of their functions. Finally, increased knowledge about the circumstances of the defendant's offense provides the court with a better assessment of defendant's competency, his willingness to plead guilty, and his understanding of the charges against him." (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft 1968) § 1.6 Commentary, p. 33.)

Recognizing the salutary purposes of a "factual basis inquiry" requirement, several jurisdictions have enacted statutes or rules analogous to Penal Code section 1192.5. For example, rule 11 of the Federal Rules of Criminal Procedure provides that the court may not enter judgment upon a plea of guilty "unless it is satisfied that there is a factual basis for the plea." It has been held that "the 'factual basis' requirement does not compel the court to resolve all contradictory evidence in the case. To do so would usually require an evidentiary hearing, thereby nullifying one common motivation behind guilty pleas: the avoidance of the agony and expense of a protracted trial. [Citation.] The court need not be convinced beyond a reasonable doubt that defendant is in fact guilty." (*United States* v. *Webb* (1st Cir. 1970) 433 F.2d 400, 403.) Wright suggests that it "should be enough that there is a factual basis for the plea, and not necessarily that the defendant is guilty. . . . In determining whether there is a factual basis for the plea the rules of evidence do not apply, since the purpose is merely to corroborate what the defendant already admits. In many cases the presentence report will contain sufficient information for this purpose." (1 Wright, Federal Practice and Procedure (1969) § 174, pp. 377-378.)

In a similar vein, the American Bar Association Special Committee on Minimum Standards for the Administration of Criminal Justice recommends that the extent of inquiry be left largely to the discretion of the trial judge: "Consistent with the position taken in the revision of Federal Rule 11, no attempt is made here to state specifically a particular probability-of-guilt standard for this inquiry. The matter is left largely to the discretion of the judge. The circumstances of the case will often dictate the kind and amount of inquiry which is necessary. Nor is any attempt made in the standard to limit the kind or extent of the inquiry. The revision of Federal Rule 11 does not require a particular kind of inquiry, and the committee note thereto observes that the court may satisfy itself 'by inquiry of the defendant or the attorney for the government, or by examining the presentence report, or otherwise . . . .' Thus, under the standard the judge would be free to utilize any appropriate procedure which seems best for his court and for the kind of case involved." (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft 1968) § 1.6 Commentary, p. 33.)

In order to effect the purpose underlying the factual basis requirement of Penal Code section 1192.5, the trial judge should develop the factual basis on the record, for example, by having the accused

describe the conduct that gave rise to the charge, or by making specific reference to those portions of the grand jury transcript or preliminary hearing transcript which provide a factual basis for the plea, or by eliciting information from the defense attorney or the district attorney. (*Santobello* v. *New York* (1971) 404 U.S. 257, 261 [30 L.Ed.2d 427, 432, 92 S.Ct. 495]; see also *Williams* v. *State* (Fla. 1975) 316 So.2d 267, 273, wherein the Florida Supreme Court stated: "We hold that the court may satisfy itself by statements and admissions made by the defendant, his counsel, and the prosecutor; by factual evidence heard or filed in the cause, i.e., preliminary hearings, motions to suppress, or depositions taken in the cause. Under appropriate circumstances, the presentence investigation report may be used to present this factual information to the trial court. These are not the exclusive means for a trial court to reach a determination. The trial court is free to utilize whatever procedure is best for the particular case before it to ensure that the defendant is entering a plea to the proper offense under the facts of the case. But whatever method is employed, the court should indicate for the record the source of the factual information supporting the plea.") It should be emphasized that the California Penal Code does not require the trial court to interrogate a defendant personally in an element by element manner about the factual basis for his guilty plea. The California statute merely requires that the "court shall . . . cause an inquiry to be made of the defendant to satisfy itself . . . that there is a factual basis for such plea." It is also clear that the court need not obtain general information about the crime directly from the defendant in order to establish the factual basis for the plea. A defendant need not admit culpability. He may, in fact, enter a plea of guilty even though he protests his innocence. (*North Carolina* v. *Alford* (1970) 400 U.S. 25 [27 L.Ed.2d 162, 91 S.Ct. 160].)

█ In the case before us, the sole reference in the record alluding to the facts of the case is a statement made by *Watts'* attorney immediately prior to the entry of the guilty plea, wherein he stated: "We have discussed the elements of the charges against him and the possible defenses to those charges, and I have advised him of the law as it relates to the facts of his case. I have advised him of the legal consequences of a guilty plea to this charge and that the possible punishment for this offense is five years to life." We do not consider such statement sufficient to meet the requirements of Penal Code section 1192.5. However, the grand jury transcript, which was a part of the record before the trial court, provides an ample factual basis for the guilty plea to second

degree murder.[2] According to testimony before the grand jury, on the evening of May 30, 1975, Watts and his codefendants, Fontaine and Maxey, met together and drove around San Francisco talking about various means of stealing some money. As they passed the Fox Liquor and Grocery Store on the corner of Eddy and Larkin Streets, one of the three mentioned robbing it. After some discussion, the three drove to a place where Maxey could get a gun. Fontaine already had a gun in his possession. Upon their return at approximately 11:45 p.m., Fontaine and Maxey went into the store, while Watts remained in the back seat of the vehicle, which they had parked in front of the store. Once inside the store, one of the two pointed his gun at the clerk and told him not to move, while the other directed his weapon at the head of the proprietor, Adel Eways, and demanded his money. Eways opened his cash register and attempted to give the two intruders the money they wanted, but before he could do so, one of them fired two shots at him, one of which was fatal. Moments after the firing, Fontaine and Maxey rushed out of the store and into their car. Watts, who in the very brief interim had jumped into the driver's seat, then quickly drove away. Within minutes the police apprehended the three. During their ensuing search of the vehicle, the police recovered two guns.

Since the grand jury transcript was contained in the superior court file, it may be presumed that the trial court had this information before it, and could satisfy itself therefrom that there was a factual basis for appellant Watts' plea.

The presentence report prepared by the adult probation department set forth a statement of the offenses and recited essentially the same facts. It included statements made by Watts admitting that he was at the scene, that he knew the coparticipants were armed, and that they had all talked of committing a robbery. However, he denied knowledge that a robbery was going to occur. The presentence report was, of course, read by the trial judge prior to pronouncement of judgment. The law requires that copies thereof be made available to counsel at least two days before the sentencing. (Pen. Code, § 1203.) It is to be assumed that defense counsel conferred with his client concerning the contents of the report.

---

[2]Respondent has filed motions to augment the record on appeal to include (1) the transcript of the grand jury hearing which culminated in Watts' indictment and (2) Watts' presentence probation report. The motions, made pursuant to rule 12(a) of the California Rules of Court, are granted.

On the basis of the grand jury transcript and the presentence report, we conclude that there was a sufficient factual basis underlying Watts' plea of guilty to second degree murder. The failure of the trial court to make specific reference to such factual basis must be deemed error, but in light of the record, the error was harmless. Watts makes no showing that he was prejudiced by the court's failure to make such reference. The grand jury transcript and the presentence probation report establish that Watts participated in the crimes with which he was charged. It is concluded that the trial court's denial of Watts' motion to withdraw his plea did not constitute an abuse of discretion. (See *Williams* v. *State, supra,* 316 So.2d at p. 274; *State* v. *Rodriguez* (1975) 112 Ariz. 193 [540 P.2d 665, 667].)

II. ■ Watts next contends that he should have been permitted to withdraw his guilty plea because he was denied a reasonable time to deliberate and consider the plea bargain. Reliance is placed upon the case of *People* v. *McCrory* (1871) 41 Cal. 458, 462, wherein the Supreme Court stated that "when there is reason to believe that the plea has been entered through inadvertence, and without due deliberation . . . the Court should be indulgent in permitting the plea to be withdrawn." The Supreme Court also stated, however, that a "party should not be allowed to trifle with the Court by deliberately entering a plea of 'guilty' one day and capriciously withdrawing it the next," and concluded that the decision to allow withdrawal of a guilty plea rests in the sound discretion of the trial court "and this Court will not interfere except in a case of abuse of discretion." (41 Cal. at p. 462.)

Here, the record shows that after being informed of the district attorney's offer, Watts requested and received time to consult with his parents on the matter. He was also given an opportunity to discuss the bargain with his attorney. Neither Watts nor his counsel requested additional time to consider the plea bargain. Furthermore, had Watts been dissatisfied with the terms of the offer, he could have rejected it and gone to trial. In this connection, it is argued that appellant was coerced into accepting the plea inasmuch as the court warned him that if he rejected the plea, he would be the first to go on trial. However, as respondent points out, from the time of his arrest Watts must have anticipated the possibility that he could be tried before his codefendant. Therefore, even if the court made such a statement, assuming arguendo that it did so, it could not have constituted a coercive element in Watts' determination to plead guilty.

It is further argued that because Watts' codefendant Fontaine was given three days to contemplate his plea and Watts was given only one hour, Watts was denied his right to equal protection under the Fourteenth Amendment. The argument is without merit. The law does not require that an offer to plead be held open for any specified period of time; it need only be held open for a reasonable period of time, upon request therefor. (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft 1968) § 1.3, pp. 21-22.)

We conclude that the trial court did not deny Watts a reasonable time to consider the plea bargain.

III. Watts next argues that he should have been permitted to withdraw his guilty plea inasmuch as he was operating under a mistake of fact at the time he entered into the bargain. The alleged mistake of fact to which appellant refers is that he had overestimated the strength of the state's case against him, and had assumed that his codefendant Fontaine would implicate him if the case went to trial. His codefendant Maxey went to trial shortly after Watts entered his plea, and was acquitted. In his testimony at the Maxey trial, Fontaine did not implicate Watts. This is hardly the type of mistake, ignorance or inadvertence which would permit the withdrawal of a guilty plea. (See *People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250].)

IV. Watts next asserts that the district attorney failed to abide by the terms of the plea bargain in actively seeking a prison sentence. Contrary to appellant's assertion, however, the district attorney never promised not to pursue a prison sentence. According to the declaration of Watts' trial counsel, the district attorney indicated that although he would prefer to have Watts sent to prison, he would not "recommend or fight against" a commitment to the California Youth Authority or a sentence under the youthful offender provisions of Penal Code section 1202b.

Subsequently, in the change of plea proceedings, the district attorney maintained this promise for, in presenting his view that Watts should be imprisoned, he refrained from coupling it with any type of opposition to the court's considering a sentence involving commitment either to the Youth Authority or to prison subject to the benefits of Penal Code section 1202b. Thereafter, the court did in fact sentence Watts subject to section 1202b.

V. ■ Watts lastly contends that because the trial court failed to explain to him the effect of a guilty plea on his appeal rights, he should have been permitted to withdraw his plea. His reliance on *People* v. *Brown* (1971) 18 Cal.App.3d 1052 [96 Cal.Rptr. 476], is misplaced. In *Brown,* the defendant entered a guilty plea on the condition that a certificate of probable cause be issued so that he might appeal from the denial of a motion to dismiss. The court failed to inform Brown that by pleading guilty he forfeited his right to appeal from the denial of the dismissal motion. The reviewing court held that Brown was entitled to withdraw his guilty plea because had he known he already had a right of review under Penal Code section 999a and that by pleading guilty he was abandoning that review, it is doubtful that Brown would have pled guilty. Here, however, Watts did not change his plea in contemplation of any appeal rights. Therefore, the holding of *Brown* is of no assistance to him. (See *People* v. *Serrano* (1973) 33 Cal.App.3d 331 [109 Cal.Rptr. 30].

Penal Code section 1018 provides that a trial court "must" allow the withdrawal of a guilty plea only in the case of a defendant who entered a guilty plea without counsel, and in other cases the court "may . . . for good cause shown, permit a plea of guilty to be withdrawn and a plea of not guilty substituted." Although this section is to be liberally construed, the withdrawal of such a plea rests in the sound discretion of the trial court and a denial may not be disturbed unless the trial court has clearly abused its discretion. (*In re Brown* (1973) 9 Cal.3d 679, 685 [108 Cal.Rptr. 801, 511 P.2d 1153].) We conclude that no abuse of discretion has been shown.

Judgment is affirmed.

Devine, J.,* and Good, J.,† concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1977.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

†Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.