Filed 8/11/16  P. v Fernandez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARTIN DIEGO FERNANDEZ,<br><br>    Defendant and Appellant. | D067551<br><br><br><br>(Super. Ct. No. SCN325353) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard R. Monroy, Judge.  Affirmed in part, with directions.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Collette Cavalier and Britton Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Martin Diego Fernandez pleaded guilty to one count of residential burglary (Pen. Code, §§ 459, 460; count 2)[1] in exchange for dismissal of other charges and allegations. Fernandez agreed the court would determine the sentence and whether or not to order discretionary registration as a sex offender pursuant to section 290.006. Although Fernandez stated the factual basis for his plea was that he "[a]ided and abetted another person who entered a residence with intent to commit theft or a felony therein," the court found Fernandez was the person who entered the female victim's bedroom through a sliding door while she slept and repeatedly attempted to remove her pants. The court ordered Fernandez to register as a sex offender and ordered him to stay away from the victim. The minute order included a sex offender registration fee of $300 pursuant to section 290.3, even though the court did not make such an order.

Fernandez asserts three contentions on appeal: (1) the court abused its discretion in ordering him to register as a sex offender pursuant to section 290.006 because the facts he agreed upon to support his plea to count 2 did not include a sexual offense and he did not agree to a *Harvey* waiver,[2] (2) the imposition of a $300 sex offender fine was not ordered and was unauthorized, and (3) the stay-away order was unauthorized. We disagree with the first contention and conclude the court acted within its discretion to order Fernandez to register as a sex offender pursuant to section 290.006. However,

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    See *People v. Harvey* (1979) 25 Cal.3d 754, 758 (*Harvey*), holding conduct underlying dismissed charges cannot be considered at sentencing absent a waiver.

2

since the People concede the second point and we agree with the third, we strike the $300 fine imposed pursuant to section 290.3 and the stay-away order. We affirm the judgment in all other respects.

BACKGROUND

A[3]

"On [August 23, 2013], at about 5:30 [a.m.], [San Diego County Sheriff's Department deputies] responded to a call from a residence in Fallbrook to investigate an attempted rape. The deputies met with the residents of the home, victim Jane Doe and her mother. Ms. Doe was nervous and crying. She had no physical injuries, and she declined any medical attention. She reported she and her female friend had each consumed a couple beers the night prior into the early morning. Her friend left the residence around 2:00 [a.m.] that morning. Ms. Doe remembered leaving the sliding glass door in her bedroom opened because it was hot, and the screen door was unlocked and closed. She also kept the porch light on outside of her bedroom and left the bedroom door unlocked and closed. A few hours after falling asleep, she woke up to the sound of empty beer cans being knocked over. When she opened her eyes, she saw the silhouette of a man standing over her bed. The man was looking down at her and breathing heavily. He sat on her bed and reached to pull Ms. Doe's yoga pants halfway down. She pulled them up again. The unknown man pulled Ms. Doe's yoga pants down twice more, and

---

[3]     Because both parties draw their recitation of the factual background from the probation report and it is generally consistent with the trial testimony offered before the mistrial, we quote the summary of evidence from the report.

Ms. Doe pulled her pants up again. While she was not completely awake, she told the suspect to get off of her while struggling to keep him from taking her pants off. She then heard her mother pounding on her door. The suspect fled out the screen door. Ms. Doe stated she had to unlock her bedroom door to let her mother in. She knew she did not lock her door prior to falling asleep because she never locked it. She believed the suspect locked the door after entering the bedroom. Ms. Doe described the suspect as being muscular and 'having wide shoulders,' shaved head and wearing a white or light colored tank top-like shirt. She did not see his face because it was too dark in her room. She did not know if he was White or a light skinned Hispanic male.

"The deputies searched the perimeter of the residence and noticed the wooden fence in the backyard had three boards removed. Ms. Doe said the boards were present the night before, and she believed the suspect must have removed them. Deputies found a cigarette butt near the fence where the boards had been removed. No one who lived at the residence smoked the brand of cigarette that was found. Ms. Doe reported she smelled cigarette smoke earlier that morning while her friend was there, and she looked outside to see where the odor was coming [from]. She thought it might have been her brother, but he was asleep in his bedroom. She also said she smelled cigarette smoke on the suspect during the attack. The cigarette butt was collected for evidence along with latent prints from the screen[']s metal frame on the door and 'Touch DNA' from the pants when the [man] pulled down Ms. Doe's pants. A shoe print having a diamond pattern similar to a Vans tennis type shoe was collected.

"Later the same day around 11:00 [a.m.], Ms. Doe called the deputy and said she remembered she had also went [*sic*] to sleep with the TV on, and it was off after the suspect left.

"On [October 30, 2013], a CODIS match from the Sheriff's crime lab from DNA extracted from the cigarette butt was made on [Fernandez]. The investigator, who was familiar with [Fernandez] from prior law enforcement contact, knew [Fernandez] lived down a dirt road to the [w]est of the victim's residence. He contacted Ms. Doe and showed her a photo lineup. She identified [Fernandez] as the suspect who committed the offense. Ms. Doe's brother was present and he said [Fernandez's] name was 'Diego,' and he lived down the street from them. Her brother met [Fernandez] before and did not like him or the people he associated with. Both the victim and her brother said [Fernandez] had no reason to be at their residence. Ms. Doe said she saw [Fernandez] two weeks prior to the offense. He walked [past] her home while she was outside washing her car. [Fernandez] passed by a second time and she did not pay attention to him.

"A search warrant was acquired on [Fernandez] and his residence. Deputies were looking for 'Vans' type tennis shoes, a generic brand type of cigarette, and a DNA sample from [Fernandez].

"On [November 5, 2013], detectives served the search warrant at [Fernandez's] residence and he was detained. The deputies recovered from [Fernandez's] room a pair of Vans tennis shoes [*sic*] matched the diamond pattern at the victim's residence, the brand of cigarettes recovered from the victim's yard, and a white 'wife beater' [T]-shirt. They recovered numerous pornography magazines and CD's and a metal bar with a handmade

5

handle at one end to use as a club. [Fernandez] was arrested and transported to the Fallbrook Station. He said he did not know his neighbors, but he knew the victim's brother because he asked to borrow a bike pump. [Fernandez] said he had never been in or around the victim's yard. When the deputy explained they found DNA to prove he was at the victim's residence the night of the offense, [Fernandez] denied ever going to the residence, and [said] he did not know the girl."

B

Fernandez was charged with one count of felonious assault with intent to commit rape during first degree battery (§§ 220, subd. (b), 460; count 1), burglary of the first degree by unlawfully entering an inhabited dwelling with intent to commit rape (§§ 459, 460; count 2), and possession of a billy club (§ 22210; count 3). Count 2 included a violent felony allegation stating a person, other than an accomplice, was present in the residence at the time of the burglary. (§ 667.5, subd. (c)(21).)

After a jury was unable to reach a verdict in a bifurcated trial of counts 1 and 2, Fernandez pleaded guilty to count 2 as a residential burglary (§§ 459, 460). Fernandez admitted these charges and stated he "[a]ided and abetted another person who entered a residence with intent to commit theft or a felony therein." Fernandez agreed the court would decide the sentence and whether or not to impose discretionary registration as a sex offender. Fernandez did not agree to a *Harvey* waiver. In accordance with the plea, the People dismissed the balance of the counts and the violent felony allegation in count 2.

6

In his probation interview, Fernandez stated he was under the influence of methamphetamine at the time of the offense. He said he knew the victim's brother from the neighborhood. Fernandez said he and a friend decided to steal a video game console, television, and other items from the victim's house. He stated his friend entered the house while Fernandez remained outside as a lookout. He reported the friend ran from the residence about 40 seconds after entering the residence. Fernandez denied knowing what happened inside the residence until he was arrested.

According to the probation report, Fernandez was evaluated in the moderate to high risk category for being convicted of another sexual offense. The probation department indicated Fernandez failed to take responsibility for his actions and minimized his role by saying he was acting as a lookout for a friend. It recommended Fernandez be ordered to register as a sex offender pursuant to section 290.006.

Fernandez submitted a psychological report stating Fernandez denied entering the residence or sexually assaulting the victim. The psychologist opined Fernandez did not need to register as a sex offender and did not "seem to pose any significant risk to the public in terms of committing a sexual offense."

The court sentenced Fernandez to the middle term of four years in state prison. The court also exercised its discretion to order Fernandez to register as a sex offender. It imposed various fines and fees. At the conclusion of the hearing, the court stated Fernandez was to have no contact with the victim.

Along with his notice of appeal, Fernandez filed a request for a certificate of probable cause stating he intended to challenge "the decision to order that he register as a

7

sex offender pursuant to [section] 290.006." The court denied Fernandez's request for a certificate of probable cause finding he had "not shown reasonable, constitutional, jurisdictional, or other grounds for appeal relating to the legality of the proceedings and denies the request." Fernandez contends the denial of his request for a certificate of probable cause has no effect because he is not seeking to set aside his plea. (§ 1237.5; Cal. Rules of Court, rule 8.304(b)(4).)

## DISCUSSION

### I

### *Discretionary Sex Offender Registration*

Fernandez concedes the trial court's consideration of discretionary registration was within the scope of the plea agreement. Fernandez also states he "does not challenge the sufficiency of the evidence introduced at trial which supports the trial court's belief that [Fernandez] was the man in the house or the wisdom of the discretionary decision to order registration in light of that belief." Instead, Fernandez asks us to hold "the trial court's discretion under … section 290.006 was limited by law to the factual scenario agreed to in the plea agreement" and the court breached the plea agreement by considering facts beyond his factual scenario. We decline to so hold.

### A

### *General Legal Principles*

The court has discretion to order any person to register as a sex offender, pursuant to the Sex Offender Registration Act, for any offense not included specifically in section 290, subdivision (c), "if the court finds at the time of conviction or sentencing that the

person committed the offense as a result of sexual compulsion or for purposes of sexual gratification.  The court shall state on the record the reasons for its findings and the reasons for requiring registration."  (§ 290.006.)  "[U]nder the discretionary registration statute, the required finding need only be found true by a preponderance of the evidence." (*People v. Mosley* (2015) 60 Cal.4th 1044, 1052, fn. 4.)

"A plea bargain is a negotiated agreement between the prosecution and the defendant by which a defendant pleads guilty to one or more charges in return for dismissal of one or more other charges.  [Citation.] … [Citation.]  [¶]  Because a negotiated plea agreement is in the nature of a contract, 'it is interpreted according to general contract principles.' "  (*People v. Martin* (2010) 51 Cal.4th 75, 79.)  " 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.' "  (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)  " 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.' "  (*Ibid.*)  " '[T]he course of actual performance by the parties is considered the best indication of what the parties intended the writing to mean.' "  (*Epic Communications, Inc. v. Richwave Technology, Inc.* (2015) 237 Cal.App.4th 1342, 1355.)

B

*Application*

In this case, Fernandez pleaded guilty to count 2 for violating sections 459 and 460. The charge in count 2 regarding violation of section 459 stated the entry of the building was done "with the intent to commit rape."

The plea form states Fernandez was not induced to enter this plea by any promise or representation except "dismiss remaining charges [and] allegations—sentence to court; judge to decide discretionary 290 registration." Fernandez did not admit the special allegation that the burglary was a violent felony within the meaning of section 667.5, subdivision (c)(21). As a result, the violent felony allegation was dismissed along with the remaining counts.

The plea form set out a factual basis for his plea stating he "[a]ided and abetted another person who entered a residence with intent to commit theft or a felony therein."[4] Both the probation report and the prosecutor's sentencing brief based the recommendations on the factual scenario that Fernandez entered the residence for sexual gratification. Fernandez's attorney argued in his brief the facts asserted by the prosecution were not believable and suggested the court consider asking the probation officer to prepare a new report without the assumption Fernandez entered the bedroom. Nevertheless, he did not contend the court was contractually bound to consider only

---

4       We note admitting the entry of the residence with an intent to commit "a felony therein" is not inconsistent with the charge the entry was committed with an intent to rape.

10

Fernandez's aiding and abetting scenario. Nor did he request to withdraw the plea based upon a breach of the bargain if the court were to consider the prosecutor's factual theory.

During sentencing, Fernandez's attorney merely pointed out the difference between the factual theories presented by the prosecution and Fernandez. Fernandez did not ask to remove the "with the intent to rape" language from count 2 charging a violation of section 459 or argue a breach of the plea agreement. Rather, Fernandez's attorney acknowledged it was up to the trial court to ultimately determine which factual basis it would accept to proceed with its analysis for sentencing and discretionary registration. Therefore, the conduct of the parties in this case indicate they did not intend to bind the court to Fernandez's factual basis for purposes of sentencing or for the court's exercise of its discretion under section 290.006.

We also note the court in this case was not obligated to inquire about the factual basis of the plea since the plea was not conditioned upon a sentencing outcome. "Section 1192.5 … imposes on trial courts the burden of inquiry into a factual basis for a guilty plea only for negotiated pleas specifying the punishment to be imposed." (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1174, italics omitted.) The court has no such duty to inquire into the factual basis of the plea not conditioned upon receipt of a particular sentence. (Levinson, California Criminal Practice (The Rutter Group 2015) ¶ 13:32.) "There is … no federal constitutional requirement that a court, whether federal or state, inquire into the factual basis for a plea. '… The Constitution's standard "was and remains whether the plea represents a voluntary and intelligent choice." ' " (*Hoffard*, at p. 1183.)

11

Here, Fernandez agreed sentencing would be left to the discretion of the court as would the determination about discretionary sex offender registration.

The court did ask Fernandez if the facts stated in the plea form were what happened. However, Fernandez cited no authority for his argument on appeal that a court is bound by a factual scenario a defendant agrees supports a conviction when the court is deciding whether or not to impose discretionary sex offender registration under section 290.006. The factual scenario provided by Fernandez merely ensured he committed a crime at least as serious as the first degree burglary conviction to which he was willing to plead.[5]

Fernandez's reliance upon *Harvey, supra,* 25 Cal.3d 754 does not assist him. In *Harvey,* the Supreme Court held, absent a waiver, "it would be improper and unfair to permit the sentencing court to consider any of the facts underlying the dismissed count … for purposes of aggravating or enhancing defendant's sentence" and the defendant should "suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count." (*Id.* at p. 758.) However, the court also explained the court may take into account facts underlying the dismissed charges if they are transactionally related to the offense to which the defendant pleaded guilty. " 'The plea

---

[5]    "The purpose of the [section 1192.5] requirement [for the court to inquire as to the factual basis for the plea] is to protect against the situation where the defendant, although he realizes what he has done, is not sufficiently skilled in law to recognize that his acts do not constitute the offense with which he is charged. [Citation.] Inquiry into the factual basis for the plea ensures that the defendant actually committed a crime at least as serious as the one to which he is willing to plead." (*People v. Watts* (1977) 67 Cal.App.3d 173, 178.)

bargain does not, expressly or by implication, preclude the sentencing court from reviewing all the circumstances relating to … *admitted* offenses' " when choosing the appropriate sentence " 'commensurate with the gravity of his crime.' " (*Ibid.*; see *People v. Calhoun* (2007) 40 Cal.4th 398, 406-407.) Courts have observed the *Harvey* rule "must give way … when it would prevent the trial court from considering all the factors necessary to an informed disposition for the offenses to which defendant has pleaded guilty." (*People v. Klaess* (1982) 129 Cal.App.3d 820, 823.)

Count 2 incorporated an intention to commit rape in the burglary charge. Therefore, it was appropriate for the court to consider all of the evidence related to the charges in count 2, including what occurred when the person was in the bedroom. Additionally, the evidence in this case about the sexual assault charged in count 1 was transactionally related to the burglary. The event giving rise to both counts occurred in one night with one victim over the course of seconds or minutes.

Moreover, for purposes of sex offender registration, "discretionary registration does not depend on the specific crime of which a defendant was convicted. Instead, the trial court may require a defendant to register under section [290.006] even if the defendant was not convicted of a sexual offense." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197-1198 (*Hofsheier*),[6] citing *People v. Olea* (1997) 59 Cal.App.4th 1289 (*Olea*).)

---

[6] *Hofsheier, supra,* 37 Cal.4th 1185 was disapproved on another point in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888 (*Johnson*).

In *Olea, supra,* 59 Cal.App.4th 1289, the defendant was alleged to have entered the homes of elderly individuals where he stole or disturbed items. In one instance, a female victim awoke to find the defendant on top of her pulling at her adult diaper. He fled when she called for help. In another instance, a female victim was awoken by the defendant. When she went into a bathroom, she saw him begin to masturbate and he grabbed at her as she walked past him to go to a neighbor's to call police. (*Id.* at p. 1294.) The defendant pleaded guilty to residential burglary charges in exchange for dismissal of the charged sex offenses. Although the parties agreed the dismissed offenses were transactionally related to the charges to which the defendant pleaded guilty, there was no mention during the plea colloquy of sex offender registration. (*Id.* at pp. 1293-1294.) At the sentencing hearing, over defense objections, the trial court ordered sex offender registration under the discretionary statute. (*Id.* at p. 1295.)

The appellate court noted the circumstances of the plea in that case could reasonably have led the defendant to believe the dismissal of the sex offense counts would eliminate the basis for registration. (*Olea*, *supra*, 59 Cal.App.4th at p. 1297.) The appellate court concluded it was a violation of the defendant's due process rights to impose a registration requirement without notice and violated the plea agreement. (*Id.* at p. 1298.) In remanding the matter for resentencing, the appellate court stated, "[t]he court's determination that [defendant] should have to register as a sex offender was eminently within its discretion; its error was in imposing the requirement without offering [defendant] a chance to withdraw his plea." (*Id.* at p. 1299.)

14

Here, in contrast to *Olea*, the plea agreement contemplated the court's exercise of discretion in determining whether or not to order sex offender registration. When the court took the plea, Fernandez stated he understood a discretionary lifetime requirement to register as a sex offender was a potential of his plea even though he asserted an alternate factual basis for his plea. We conclude, therefore, it was proper and within the scope of the plea agreement for the court to consider the evidence presented at trial regarding the incident, to find Fernandez was the person in the bedroom, and to exercise its discretion to impose lifetime registration under section 290.006. "In order to make a discretionary determination as to whether or not to require registration [under section 290.006], the trial court logically should be able to consider all relevant information available to it at the time it makes its decision." (*People v. Garcia* (2008) 161 Cal.App.4th 475, 483, disapproved on another ground in *Johnson, supra,* 60 Cal.4th at p. 888, and disapproved on another ground in *People v. Picklesimer* (2010) 48 Cal.4th 330, 338, fn. 4, 339.)

II

*Sex Offender Fine*

The parties agree the court did not orally impose a $300 sex offender fine pursuant to section 290.3, although this fine appears on the minute order of the sentencing hearing and on the abstract of judgment. We may correct a judgment at any time to reflect the oral judgment of the sentencing court. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

Additionally, section 290.3, subdivision (a) provides in pertinent part, "[e]very person who is convicted of any offense specified in subdivision (c) of [s]ection 290 shall,

15

in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction … unless the court determines that the defendant does not have the ability to pay the fine."  Sections 459 and 460 are not among the offenses listed in section 290, subdivision (c).  Section 290.3 does not refer to the discretionary sex offender registration under section 290.006.  Therefore, we strike the $300 fine as unauthorized.  (*People v. Scott* (1994) 9 Cal.4th 331, 354; *People v. Wilson* (2013) 219 Cal.App.4th 500, 518.)

III

*Postjudgment No-Contact Order*

Fernandez contends the broad and indefinite order to stay away from the victim was unauthorized and should be stricken.  (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1048, fn. 7 ["[a] claim that a sentence is unauthorized may be raised for the first time on appeal, and is subject to correction whenever the error comes to the attention of the reviewing court"].)  We agree.

During the pendency of the criminal proceedings, Fernandez was ordered to have no contact with the victim.  Such an order was permitted under section 136.2, subdivision (a), during the criminal proceeding before the judgment.  However, section 136.2, subdivision (a), does not authorize a postjudgment no-contact order.  (*People v. Ponce* (2009) 173 Cal.App.4th 378, 383 (*Ponce*).)

Section 136.2, subdivision (i)(1) allows a court to issue a protective order for up to 10 years after a defendant is convicted of certain enumerated crimes involving domestic violence or "any crime that requires the defendant to register pursuant to subdivision (c)

16

of [s]ection 290." However, the crimes for which Fernandez was convicted did not involve domestic violence and, as we have discussed, violations of section 459 and 460 are not among the crimes listed in subdivision (c) of section 290, which require mandatory sex offender registration. Therefore, subdivision (i) of section 136.2 does not authorize the indefinite no-contact order here.

"[E]ven where a court has inherent authority over an area where the Legislature has not acted, this does not authorize its issuing orders against defendants by fiat or without any valid showing to justify the need for the order." (*Ponce*, *supra*, 173 Cal.App.4th at p. 384.) The prosecutor and the probation report noted the victim's traumatization as a result of the event and the probation report recommended a no-contact order. However, no evidence was presented regarding an ongoing threat to the victim from Fernandez to justify a broad no-contact order for an indefinite period of time. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 996; *Ponce*, at pp. 384-385 ["a prosecutor's wish to have such an order, without more, is not an adequate showing sufficient to justify the trial court's action"].) Therefore, the no-contact order was unauthorized and must be stricken. (*Robertson*, *supra*, at p. 996.)

In so holding, we do not minimize the seriousness of Fernandez's crime or the traumatization and fear the victim suffered as a result. We note, however, the victim may seek a protective order under Code of Civil Procedure section 527.6, if necessary.

DISPOSITION

The trial court is directed to strike from the court minutes and the abstract of judgment the $300 fine imposed pursuant to section 290.3 as well as the no-contact order.

17

The court is also directed to send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


O'ROURKE, J.