Filed 5/12/21  P. v. Carlos CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B303548 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A360287 |
| v. | |
| HENRY CARLOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed.

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendant and appellant Henry Carlos (defendant) appeals from the order denying his petition for resentencing under Penal Code section 1170.95,[1] entered after appointment of counsel, briefing by both counsel, issuance of an order to show cause, and a hearing on the merits of the petition. Defendant contends that the trial court erred because the prosecution failed to prove beyond a reasonable doubt that he was ineligible for relief under section 1170.95. Because defendant never made a prima facie showing of eligibility for or entitlement to relief under the statute, we reject defendant's contention. Finding no error, we affirm the order.

## BACKGROUND

**The 1980 charges**[2]

In 1980, defendant and codefendant Ernest Romero were charged by information with the murder of Macario Sanchez in count 1, and the murder of Abraham Amesole in count 2. The information also alleged the special circumstance of multiple murders, within the meaning of former section 190.2, subdivision (a)(3), specifying defendant as the actual killer and Romero as the aider and abettor. In count 3, defendant and Romero were charged with assault upon Joseph Duran by means of force likely to cause great bodily injury and with the intent to commit

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

[2] Attached to defendant's section 1170.95 petition are copies of the information, abstracts of judgment, minute orders regarding sentencing, and the reporter's transcript of the sentencing hearing. The same documents are attached to defendant's response to the prosecution's motion to reconsider the order to show cause.

murder, in violation of former section 217.[3]  In addition, it was alleged that defendant personally used a firearm, a rifle (§ 12022.5), and as to Romero, that a principal was armed with a firearm (§ 12022, subd. (a)).

**The shooting**[4]

On June 25, 1980, around 7:00 p.m., Sanchez, Duran, and Amesole (collectively, victims) were sitting in a car parked next to the curb, talking to their friend April Martinez, who was standing next to the passenger side of the car.  A 1954 rust-colored lowrider Chevrolet passed by on the street.  Moments later, the same car approached from the opposite direction and stopped alongside the car in which the victims were sitting.  The passenger in the Chevrolet said, "Where are you from?"[5]  When no one responded the passenger said, "Keep out of El Sereno."  The passenger then pulled out a rifle and began firing into the victims' car.  Then the passenger got out, walked to the driver's side of the victims' car, aimed the rifle at the window and fired

---

[3]  Section 217 has since been repealed.  (See Stats. 1978, ch. 579, § 9.)  Attempted murder is a lesser included offense of assault with intent to commit murder; thus when defendant committed his crimes, former section 217 defined a form of attempted murder.  (*People v. Koontz* (1984) 162 Cal.App.3d 491, 496.)

[4]  In considering defendant's section 1170.95 petition, the trial court considered preliminary hearing testimony and other parts of the record of conviction.  In his opening brief defendant has summarized the testimony of three percipient witnesses to the shooting, as well as the testimony of the arresting officer and a firearms examiner.  We do the same.

[5]  In his brief defendant explains that "Where are you from?" is more of a gang challenge than a question.

3

more shots into the car. The passenger got back into the Chevrolet, and it left the scene. Duran was shot three times, but survived. The other two victims were shot and killed.

Police officers arrived at the scene within minutes after the shooting. Martinez gave them a description of the shooter's car and turned over two spent .22-caliber cartridges she found inside the victims' car. Officer E. Harrell left the scene to search the neighborhood for the Chevrolet, which he found a few minutes later. Officer Harrell pulled the car over, and as he approached it the passenger door opened, and the officer saw a rifle wedged between the passenger seat and the door. He removed his service revolver, ordered the men out of the car, and arrested them.

Officer Harrell identified the driver of the Chevrolet as codefendant Romero and the passenger as defendant. About an hour after the suspects were detained, Martinez was taken to view the car, which she identified as the same car involved in the shooting. A week before the preliminary hearing, Martinez attended a live lineup, where she told officers that one person in the line looked familiar. At the preliminary hearing she identified Romero as the person she had indicated. Martinez testified that she was "almost positive" that Romero was the shooter. Duran identified defendant and Romero as the two occupants of the 1954 Chevrolet and testified that the passenger was the shooter.

Officer Harrell recovered an expended .22-caliber casing from the rear seat of the suspects' car. This casing and the other casings recovered at the scene of the shooting were later tested and determined to have been fired from the rifle Officer Harrell recovered from the suspects' car.

4

**The plea hearing**

Defendant entered into a plea agreement and pled guilty to second degree murder on March 30, 1982. There is no reporter's transcript of the plea hearing in this appellate record, but it was described in detail in the appellate decision affirming defendant's judgment on appeal (see *People v. Carlos* (July 8, 1983, 42795) [nonpub. opn.])[6] as follows:

> "At the hearing on the guilty plea, the trial court informed defendant of the charges against him. The court mentioned that since special circumstances had been alleged as to the two murders, defendant could be sentenced to life without possibility of parole if a jury were to find the special-circumstance allegations to be true. The trial court then stated it was his understanding that a possible disposition of the case had been agreed upon, and asked the prosecutor to comment on it. The prosecutor replied that he had talked to defense counsel, and that if defendant were to plead guilty to assault with a deadly weapon as charged in the [newly alleged] fourth count and admit the allegation of having been armed with a firearm, and if he were to plead guilty to second-degree murder as to each of the two murder counts, the People would move to dismiss the special-circumstance and firearm-use allegations. The prosecutor added that it was 'an open-type plea,' that the People wanted the court to impose consecutive sentences but that defense counsel wished to argue for concurrent sentences as to all counts to which

---

[6] The prosecutor attached a copy of the opinion to his initial response to the petition, filed June 21, 2019. The opinion described what occurred in that hearing and was part of the appellate record reviewed by the trial court in the current proceedings.

5

defendant would plead guilty.  Defense counsel then indicated that the prosecutor had correctly set forth the position of the defense.

"Before accepting defendant's guilty plea, the trial court made it clear to him that his sentence for the second-degree murder as to both Counts I and II would be 15 years to life . . . .  The court thereafter explained that as to the charge of assault with a deadly weapon, defendant would get the middle term of three years . . . .  [Citation.]  [And] there would be an additional year for the 'armed' allegation (Pen. Code, § 12022), which defendant was going to admit under the plea bargain."

**Sentencing hearing**

At the sentencing hearing, the testimony of the court-appointed fingerprint expert, Lee Smith, was presented.  Smith examined photographs of the rifle used in the crimes and found the identifiable fingerprints of two individuals:  defendant and an unknown person.  Smith found three of defendant's fingerprints, all on the stock near the butt, the portion that is placed against the shoulder.  Prints from the right middle finger and the right little finger were on one side of the stock and a thumbprint was on the other side.  In Smith's opinion, the placement of the prints was not consistent with holding the rifle in order to fire it.  However, in his experience, unusable or smudged prints were not photographed, and he did not examine the rifle, so his opinion is based only on the prints that were photographed.

The sentencing court acknowledged having read the preliminary hearing transcript and portions of the probation report indicated by counsel, and found it clear that Romero was the person who actually fired the weapon at the time people were

6

killed or injured.  The prosecutor then presented the prosecution's theory of defendant's guilt, stating that whether or not defendant was the actual shooter, he knew exactly what was going to happen and why they were there; and if he was the driver, he stopped the car right next to the victims' car, allowing his passenger to get out and kill two people and wound a third while trying to kill him.  The prosecutor argued that this was a wanton, senseless murder for no more than a macho gang purpose, and that the person who fired the weapon and the person who made that firing possible were equally guilty.

The court noted that defendant handled the murder weapon, as shown by his fingerprints, and given defendant's gang background and previous gang offenses (as shown by the probation report), the court found these crimes to have been "premeditated in the sense that they had the gun and they went around looking for someone."  The court also found that the crimes were committed with a high degree of cruelty, viciousness, and callousness against particularly vulnerable victims.  For each count 1 and 2 (second degree murder), the court sentenced defendant to a consecutive term of 15 years to life, plus a consecutive one-year term for the firearm allegation of section 12022, subdivision (a).  As to count 4, assault with a firearm, the court sentenced defendant to a consecutive upper term of four years.

**Section 1170.95 petition**

On April 19, 2019, defendant filed a petition for resentencing under section 1170.95.  The petition alleged:

> "1) Petitioner was charged with felony murder/natural and probable consequences;

7

"2) Petitioner plead [*sic*] to second degree murder; AND

"3) Petitioner could not have been convicted after January 1, 2019, because of the changes in Penal Code §188 and §189 made effective thereof." (Boldface omitted.)

The petition was filed by counsel on behalf of defendant, and included a memorandum of points and authorities in which counsel claimed that defendant was factually innocent. It was argued in the memorandum that defendant was not the actual killer, was neither the driver, nor the shooter, was in the car only to get a ride to pick up his tools, and was in a state of shock and paralysis when Romero stopped the car and pulled a rifle from the back seat.[7] Also attached to the petition was the declaration of counsel stating under penalty of perjury that defendant was charged with murder, convicted upon a plea of second degree murder under the natural and probable consequences doctrine, and could not be convicted today under the 2019 changes to sections 188 and 189. Counsel also stated that conflicting witness and expert statements show that the driver was the shooter, whereas defendant was the passenger. Exhibits attached to the petition included copies of the information, abstracts of judgment, minute orders regarding sentencing, and

---

[7]    Although counsel attached documents from the record of conviction, there was no reference in the petition to any evidence or offer of proof. Defendant does not renew that argument here, and if he did have new evidence that demonstrated factual innocence, his remedy would not be under section 1170.95. (See *People v. Allison* (2020) 55 Cal.App.5th 449, 461.)

8

the reporter's transcript of the sentencing hearing, as we have summarized above.

A copy of the petition and supporting documents were served on the district attorney, who filed a response within 60 days. Defendant then filed a "response to response to the petition," which again asserted claims of factual innocence. Defendant also suggested that in 1982, second degree murder under a direct aiding and abetting theory was essentially the same as aiding and abetting under the natural and probable consequences doctrine.

Upon receipt of defendant's "response to response" and without explanation, the trial court issued an order to show cause pursuant to section 1170.95, subdivision (d)(1) and scheduled a hearing. The prosecutor brought a motion to reconsider, which the trial court denied, the hearing was held, and the trial court issued its order denying the petition on December 12, 2019. In its order, the court explained as follows:

> "This court reviewed all the relevant documents from the record of conviction in this case, including but not limited to, the preliminary hearing transcript, the transcript from the sentencing hearing in this case, and the opinion from the appellate court affirming the [defendant's] conviction. This court's review of those documents leads this court to the conclusion that the [defendant] was not convicted in this case under either a theory of felony murder, or under the doctrine of natural and probable consequences. To the contrary, the record of conviction established that the theory of conviction in the [defendant's] case is that he was a direct aider and abettor to the murders charged in this case. As such, the [defendant] is not eligible for the relief he seeks pursuant to Penal Code Section 1170.95."

9

Defendant filed a timely notice of appeal from the court's order.

## DISCUSSION

Defendant contends that the trial court applied the wrong standard of review. Defendant also contends that because his guilty plea "may have been based" on the natural and probable consequences doctrine, the trial court committed reversible error by denying the petition. Defendant argues that "[t]he key fact that was not sufficiently established was whether appellant had the intent to kill or simply had the intent to aid an assault on rival gang members[,] which would have made him guilty of murder under the doctrine . . . ." Defendant claims that there is nothing in the record to show that his guilty plea was based upon a "valid theory that [he] was a direct aider and abettor." He concludes that the prosecution was thus required to prove beyond a reasonable doubt that its theory of guilt was valid.

Respondent counters that because defendant was ineligible for relief as a matter of law, an order to show cause should not have issued in the first place, and even assuming the order to show cause was properly issued, the trial court's denial of the petition was not error. We agree with respondent.

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.), which bars a conviction for second degree murder under the natural and probable consequences theory of aiding and abetting and amends the felony murder rule. (*People v. Gentile* (2020) 10 Cal.5th 830, 838-839.) The legislation did this by amending sections 188 and 189. (*Gentile, supra*, at pp. 838-839.) "[T]o amend the natural and probable consequences doctrine, Senate Bill 1437 added section

10

188, subdivision (a)(3) . . . : 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime.'" (*Id*. at pp. 842-843; accord, § 188, subd. (a)(3).)  To amend the felony-murder rule, subdivision (e) was added to section 189, which now reads as follows:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[8]

Senate Bill No. 1437 (2017-2018 Reg. Sess.) also added section 1170.95 to permit those previously convicted of murder under the natural and probable consequences doctrine to petition for vacatur of the conviction and resentencing to the underlying felony.  Once the court receives the section 1170.95 petition, the

---

[8]     Section 189, subdivision (a) lists various felonies subject to the felony-murder rule, such as arson, rape, carjacking, robbery, burglary, mayhem and others.  The statute was amended after defendant's crimes to include "murder that is 'perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death.'"  (See *People v. Swain* (1996) 12 Cal.4th 593, 612, fn. 3.)

11

court conducts a three-step evaluation. (*People v. Perez* (2020) 54 Cal.App.5th 896, 903, review granted Dec. 9, 2020, S265254, citing *People v. Verdugo* (2020) 44 Cal.App.5th 320, 332-333, review granted Mar. 18. 2020, S260493.) First, the court reviews the petition, and if any information is missing and not readily ascertainable, the court may deny the petition without prejudice. (§ 1170.95, subd. (b)(2); *Perez, supra*, at p. 903.) If the petition contains all required information *and before any order to show cause may issue*, section 1170.95, subdivision (c) "contemplates two separate assessments by the trial court of a prima facie showing: one focused on 'eligibility' for relief and the second on 'entitlement' to relief." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975 (*Drayton*).) If the first prima facie showing is met, the court shall appoint counsel to represent the petitioner, if requested, "[t]he prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served." (§ 1170.95, subd. (c); accord, *Drayton, supra*, at pp. 974-975.) Then a prima facie showing of *entitlement* to relief is required, thereby permitting the trial court to undertake more informed analysis concerning a petitioner's entitlement to an evidentiary hearing at which the prosecutor must prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subds. (c) & (d)(3); *Drayton, supra*, at pp. 974-975.)

The first assessment requires the court to determine whether the petitioner has made a prima facie showing that he "'"falls within the provisions" of the statute'" and is thus *eligible* for relief. (*Drayton, supra*, 47 Cal.App.5th at p. 975.) "'Prima facie evidence' is defined as '[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is

produced.'" (*People v. Skiles* (2011) 51 Cal.4th 1178, 1186.)  To be eligible for relief the petitioner must make a prima facie showing of the three criteria listed in section 1170.95, subdivision (a). (*Drayton*, *supra*, at pp. 975-976.)  As relevant here, where defendant was convicted upon a negotiated guilty plea, those three criteria are:  (1) the petitioner was charged with murder "under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) "petitioner was convicted of first degree or second degree murder [after] accept[ing] a plea offer in lieu of a trial"; and (3) "petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

Although defendant's petition makes the allegations required under section 1170.95, subdivision (a), insofar as it states he had been charged with "felony murder/natural and probable consequences" (boldface omitted) and that he could not have been so convicted after January 1, 2019, because of the changes in sections 188 and 189, defendant did not successfully make a prima facie showing of eligibility for relief under the statute.  A court need not accept such allegations at face value but may also examine the record of conviction.  (*Drayton*, *supra*, 47 Cal.App.5th at p. 968; see *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178, review granted June 24, 2020, S262011; *People v. Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330, review granted; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1138, review granted Mar. 18, 2020, S260598; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 119-121, review granted Nov. 10, 2020, S264684.)  The record of conviction includes the information filed against defendant, the factual basis

13

documentation for a negotiated plea, and the abstract of judgment.  (*Verdugo*, *supra*, at pp. 328-330.)  It also includes any appellate opinion in the case.  (*People v. Lewis*, *supra*, at pp. 1138-1139.)  The contents of the record of conviction will defeat a defendant's prima facie showing when the record "show[s] *as a matter of law* that the petitioner is not eligible for relief."  (*Id*. at p. 1138, italics added; accord, *Drayton*, *supra*, at p. 968; see *People v. Torres*, at p. 1177; *Verdugo*, at p. 333; see also *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [record must show defendant is "indisputably ineligible for relief"].)  Here, documents from the record of conviction attached to defendant's petition included copies of the information, abstracts of judgment, minute orders, and the reporter's transcript of the sentencing hearing.

Defendant failed to make the required prima facie showing that he was entitled to relief under section 1170.95.  Defendant complains that the prosecutor failed to prove beyond a reasonable doubt that his *guilty plea* was based upon a theory of direct aiding and abetting and was not based upon the natural and probable consequences doctrine.  We disagree and note that the opinion affirming defendant's judgment described what occurred at the plea hearing.  In response to the trial court's inquiry regarding the factual basis for the plea, the prosecutor replied that as to Romero and defendant, "'a murder was committed . . . and that that murder was murder in the second degree and that someone who was armed with a rifle shot and killed [Sanchez and Amesole].'"  (*People v. Carlos*, *supra*, 42795.)  The prosecutor appropriately referred to the charging document for a factual basis.  (See *People v. Holmes* (2004) 32 Cal.4th 432, 436.)

14

A defendant is not required to admit guilt or to describe his role in the murder, so long as it appears that he understood the nature of the charge to which he pled guilty. (See *People v. Holmes*, *supra*, 32 Cal.4th at pp. 439-441, citing *People v. Watts* (1977) 67 Cal.App.3d 173, 178-181.) The prosecution theory of defendant's guilt was made sufficiently clear. The prosecutor did not proceed on the theory that defendant was *not* the actual killer, but rather that either defendant or Romero was the actual killer and the other principal was a direct aider and abettor. After the prosecutor provided the factual basis, defendant stated that he understood and was admitting the charges. Defense counsel then stipulated to the factual basis. (*People v. Carlos*, *supra*, 42795.)

Even if the prosecution theory of defendant's guilt had not been clear at that hearing, it was very clear at the sentencing hearing, where defense counsel obviously understood the prosecution's theory and had explained it to defendant. The prosecutor noted that whether or not defendant was the actual shooter, he knew exactly what was going to happen and why they were there; and if he was the driver, he stopped the car right next to the victims' car, allowing his passenger to get out and kill two people and wound a third while trying to kill him. In seeking concurrent sentences, defense counsel said, "[W]e recognize the driver of the vehicle would be as guilty of the crime charged as the person who did the shooting but here we're not talking about guilt. We're talking about the sentence and it seems to me that there should be some distinction between the person who did the shooting and the person who was not involved in actually firing the weapon." The court stated that the only reason defendant pled to second degree murder was to avoid life in prison without

15

the possibility of parole, and the court was convinced that if defendant had gone to trial, both he and codefendant would have been convicted and sentenced to prison without the possibility of parole. Defense counsel replied, "That's why I recommended it to him."

As defendant was charged and convicted as a direct aider and abettor, he is ineligible for resentencing under section 1170.95 as a matter of law. We note that the petition could have been denied without the issuance of an order to show cause. (See *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166-1167.) We agree with the trial court's conclusion that the record of conviction established that defendant was ineligible for relief under the statute. We thus conclude that the court did not err.[9]

## DISPOSITION

The order denying the section 1170.95 petition is affirmed.

_____, J.
CHAVEZ

We concur:

_____, Acting P. J.    _____, J.
ASHMANN-GERST                    HOFFSTADT

---

[9]    Because we find defendant was ineligible for relief under section 1170.95 based on his guilty plea, we need not address his other argument that he may have been convicted under the doctrine of natural and probable consequences as set forth in his brief.

16